[No. AO22698. First Dist., Div. Five. Mar. 12, 1984.]

CATHERINE C. SMITH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD
and E. & J. GALLO WINERY, Respondents.

## COUNSEL

Valerie Sauban-Chapla and Smith, Wright, Peterson & Chapla for Petitioner.

Robert L. McCartney and Hanna, Brophy, MacLean, McAleer & Jensen for Respondents.

## OPINION

KING, J.—In this case the Workers' Compensation Appeals Board (Board) denied the petition of Catherine C. Smith for relief under Labor Code sec-

tion 132a.[1] The Board's decision rests upon an erroneous interpretation of section 132a, and it must be annulled.

I

In *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666-667 [150 Cal.Rptr. 250, 586 P.2d 564], the Supreme Court explained the purpose and meaning of section 132a. An employee was off work for 15 months after an industrial injury. The employer's contract with the union provided that seniority could be revoked in the event of 12 months' absence from work because of illness or injury, and further that the 12-month period could be extended in cases of "compensable" injury, by agreement between the union and employer. There was no such extension agreement in this instance, and the employee was laid off shortly after his return, in a routine layoff, because his seniority had been revoked. The court stated: "Although section 132a specifically provides sanctions against '[a]ny employer who discharges, or threatens to discharge,' an employee, as the Board in the instant case noted, the provisions of the statute are not limited to those actions. *Section 132a further prohibits employers 'in any manner [to] discriminat[e]' against industrially injured employees*; the section thus refers to other ways in which an employer may unlawfully penalize an employee. Since the evidence establishes without question that loss of seniority adversely affected applicant[,] . . . the Board properly found that loss of seniority operated as a penalty within the scope of discrimination prohibited by section 132a. [¶] . . . [W]e emphasize that our present holding in no way mandates that an employer retain all employees who sustain injuries on the job. In the instant case it is undisputed both that [applicant], despite his industrial injury, remained competent to perform his job and that [his] former position was open upon his return. Section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." (22 Cal.3d at p. 667, fn. omitted; italics added.)

---

[1]Further statutory references will be to the Labor Code, unless otherwise indicated. Section 132a provides as follows: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

"(1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

## II

Smith worked for respondent E. & J. Gallo Winery (employer) as a racker and blender, starting in 1969. On March 20, 1978, she slipped and fell at work, injuring her back, hip, and leg. In 1981 she recovered workers' compensation benefits based on a finding of 20 percent permanent disability. Employer has not challenged that award or the findings on which it was based, that Smith was totally disabled from the date of injury until January, 1980, and that employer had attempted unlawfully to force its own chosen physician upon her.

Smith was fired on July 24, 1978. According to a rule in employer's contract with her union, upon two consecutive nonreported absences from work, employees were eligible to be fired. An absence was deemed reported if the employee called in sick, or if it occurred during a period for which the employee's physician had authorized absence for medical reasons, in writing or by telephone call to the employer. According to the testimony of the supervisor who fired Smith, Mr. McLoughlin, employees who violated the rule were always fired, if they had no "reasonable excuse for not being discharged."

On Wednesday, July 19, Smith's physician, Dr. Cornelsen, recommended that she enter the hospital July 21 for tests related to her industrial injury. Smith told him about the two-absence rule, and Cornelsen said that he would secure employer's authorization. On July 20 or 21 Cornelsen contacted Smith and cancelled the tests, stating that employer would not allow them, based on the view of its own physician.[2] Smith thereupon scheduled a meeting among herself, her attorney, and employer's workers' compensation manager, Mr. Ford, to discuss this unlawful action, on Monday, July 24.

On Friday, July 21, Mr. Turner, Smith's direct supervisor, called her at home. Turner testified that he made the call because Smith was a "good employee" and he hoped to avoid firing her. Turner told her that her unreported absences July 20 and 21 violated the two-absence rule, and she was already "eligible for" termination. He told her she would have to call in future absences. Smith testified that she had herself called in her absences on those days, and that she told Turner during the telephone conversation of the scheduled meeting with Ford. Turner testified that he did not recall hearing about the dispute involving Dr. Cornelsen. Both Turner and Smith agreed she said she was in too much pain to work, despite the defense physician's contrary view.[3]

---

[2] This action was one of the bases for the finding that employer tried to deprive Smith of her statutory right to select her own physicians.

[3] As noted previously, subsequently the Board found that Smith was totally disabled from working at this time, and for the succeeding 18 months.

Smith's husband testified that on Sunday, July 23, he telephoned employer's winery and reported that she would not be in on July 24, because of her injury. Employer's witnesses contended that there was no record of this call, as there would have been if it had been received.

The next day, as Smith met with Ford, McLoughlin was drafting a letter informing Smith she was fired for having violated the two-absence rule on July 20, 21, and 24, which she received in due course.

At the hearing McLoughlin testified equivocally on the question of whether he consulted with Ford before firing Smith. He acknowledged that Ford might have said the absence was excused based on information in his files. He testified further that Smith's meeting with Ford did not constitute such a valid alternative, or a waiver of past violations of the rule.

The workers' compensation judge found that Smith had failed to prove discrimination under section 132a, and the Board denied reconsideration. Both found "uncontradicted" evidence of two unreported absences, of there having been no doctor's excuse on file, and of Smith's having failed to give employer a valid reason for failing to report. Both found irrelevant the question of whether the two-absence rule was properly applied; the question was, instead, whether "the asserted grounds for discharging were actually a pretext for unlawful discrimination."

The Board concluded: "[T]he uncontradicted evidence . . . established that applicant was not terminated because of a dispute over her need for treatment." Rather, according to the Board, employer uniformly interpreted the rule, and it was applied "across the board" to all employees without regard for the nature of the illness. It held that Smith had failed to carry her burden of proof.

## III

Neither the Legislature nor the courts have fashioned a clear rule for distinguishing those forms of discrimination which are actionable under section 132a and those forms which are not. We will not attempt to define a universal rule in this case, because regardless of where that line lies, the Board misinterpreted the statute as the courts have construed it. The case must be remanded for redetermination according to a proper application of section 132a.

## A

In *Judson Steel, supra,* a showing of unlawful discrimination was made upon evidence that the employer had done no more than to "eschew[] its

own standard procedure for safeguarding absent employees' accumulated seniority." (22 Cal.3d at p. 665.) It was conceded that employer had a technical contract right to "eschew" the standard procedure. The court held that, nevertheless, the exercise of that right constituted unlawful discrimination.

Considering this with the dictum that "section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available," (*id.*, at p. 667) it is possible to conclude that save for the two exceptions just described, action which works to the detriment of the employee because of an injury is unlawful under section 132a.

The same conclusion would find support in *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 211 [167 Cal.Rptr. 65]. There the county had a limited number of "deputy II" positions for sheriff's deputies, and as a result it enacted a neutral policy which automatically reclassified as a "deputy I" any sheriff's deputy "II" who was unable to work. The county applied the policy to an industrially disabled deputy, and he petitioned for relief under section 132a. The court affirmed an award. It noted (per Kaus, J.) that testimony about how the claimant was treated vis-à-vis another employee was "beside the point." (109 Cal.App.3d at p. 215.) It held broadly that " 'a reduction in status, as well as pay postinjury, entirely because of the disability caused by the injury, is a discrimination protected against by Labor Code Section 132a [*sic*] . . . .' " (*Id.*)

■ Thus, section 132a proscribes certain actions triggered by the industrial injury which work to the detriment of the claimant, unless they were necessitated by "the realities of doing business." As can be inferred from *Judson Steel, supra* (cf. 22 Cal.3d at pp. 662-665), the only reasonable procedure for implementing such a rule is to make it the claimant's burden to show the detriment, the action, and its cause, and the employer's burden to prove an affirmative defense of business realities.

■ Measured against this standard, the Board's decision here is flawed. The question of whether employer properly applied its two-absence rule, viewed by the Board as irrelevant, is the focal point of the case. Any evidence tending to prove that the rule was not properly applied worked to weaken the affirmative defense, because it tended to prove also that the action was not *necessary* and that it was not directly linked to business *realities*. As our statement of the facts reveals, there was a volume of such evidence in this case, especially in view of the later determination that Smith was temporarily totally disabled at the time she did not "report" and the Board's finding of unlawful interference with Smith's physician who had

wanted her in the hospital at the same time and communicated this to the employer.[4]

All of this evidence must be weighed in determining whether employer established the defense of action necessitated by business realities. Additionally, on this subject the Board must consider an employer's evidence, or the lack thereof, of its past practices in like situations (such as, in this instance, evidence of what constitutes "reporting," what constitutes a "reasonable excuse" for not reporting, and the criteria for the decision whether and when to fire an employee who is "eligible" to be fired.)[5]

## B

Separately, in the Board's view Smith failed to establish a causal relationship between her disability and her termination. Again, we need not decide whether the evidence might have supported the finding. Plainly, the Board failed to consider the essential corollary questions of whether that causal connection was supplied by the actions of management people other than the one who fired Smith, or by employer's failure, in the days or weeks after the termination, to rescind the action or at least to tender reinstatement, in light of the course of events which preceded it. ■ That is, the scope of section 132a as it is explained in *Judson Steel* cannot be limited artificially to include only the motives and actions of the individual person who was employer's ultimate agent in the commission of the allegedly discriminatory action, and only at the time he acted. ■ Corporate employers are charged with knowledge of and responsibility for all of the relevant acts of all their agents done within the scope of employment. (See Civ. Code, §§ 2295, 2332, 2338, 2339; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, §§ 127, 139, 155, pp. 734, 743, 754-755.)[6] The Board's decision in this case has the effect of creating a defense of management incompetence or bureaucratic error, a notion that finds no support in the text of section 132a or the analysis set forth in *Judson Steel.*

## IV

It is the Board's function to find whether this was an instance of "discrimination" under section 132a. We are reluctant to invade that function

---

[4]Under the circumstances here it may well be that the employer's unlawful interference with Smith's medical care may itself be discrimination within section 132a.

[5]We do not mean to read into section 132a an element of malice or bad faith. Employer concedes, and *County of Santa Barbara, supra,* makes it clear, that acts which are motivated entirely by neutral criteria unrelated to the claimant or the class of industrially injured employees may nevertheless violate section 132a. Of course, evidence tending to prove malice or bad faith will necessarily undercut a tendered defense of "business realities."

[6]At no time has employer contended that in any of their acts did Turner, McLoughlin or Ford act beyond the scope of the authority conferred upon them, or that those acts were not ratified by employer's conduct after Smith was fired.

in this instance, where it is plain that both parties and both factfinders misconceived the standards and burdens applicable to this kind of proceeding.

The opinion and order of April 15, 1983, is annulled, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Low, P. J., and Haning, J., concurred.

The petition of respondent E. & J. Gallo Winery for a hearing by the Supreme Court was denied May 23, 1984.