[No. S100557. June 26, 2003.]

DEPARTMENT OF REHABILITATION et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and RONALD
LAUHER, Respondents.

## Counsel

Richard Kriman, Robert W. Daneri and David M. Goi for Petitioners.

Stephen D. Underwood and Teresa C. Eggemeyer for CSAC Excess Insurance Authority as Amicus Curiae on behalf of Petitioners.

Paul, Hastings, Janofsky & Walker and Paul Grossman for California Employment Law Council as Amicus Curiae on behalf of Petitioners.

Jones, Day, Reavis & Pogue, Elwood Lui, Scott D. Bertzyk and John A. Vogt for Los Angeles County Metropolitan Transportation Authority as Amicus Curiae on behalf of Petitioners.

James J. Cunningham; Siegel & Moreno, Lisa G. McLean and Robert D. Baker for Respondent Ronald Lauher.

William A. Herreras and Susan Silberman for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Ronald Lauher.

No appearance for Respondent Workers' Compensation Appeals Board.

## Opinion

**WERDEGAR, J.**—We address in this case two issues concerning the administration of the workers' compensation scheme in this state that have escaped definitive resolution. First, when an employee who has suffered an industrial injury returns to work following a determination the injury has become permanent and stationary, is the employee entitled to temporary disability indemnity (TDI) to compensate him for time off from work while pursuing continuing medical treatment for that permanent injury? Second, does an employer discriminate against the injured employee within the meaning of Labor Code[1] section 132a if it requires the employee to use sick and vacation leave when away from the workplace seeking treatment for his permanent injury? We answer both questions in the negative.[2]

### Facts

Applicant Ronald Lauher had worked as a rehabilitation counselor for petitioner Department of Rehabilitation (employer) for 25 years when he

---

[1] All further statutory references are to the Labor Code unless otherwise stated.

[2] Because we find employer did not discriminate against its employee, we need not decide the third issue raised, which concerned whether the Court of Appeal improperly disregarded the factual findings made below.

submitted a claim for workers' compensation benefits based on work-related stress and depression. Dr. Donald Houts submitted a report stating Lauher suffered from Gerstmann's Syndrome, i.e., a brain lesion causing Lauher to experience learning disabilities, but that he had responded to a number of medications, and his condition was permanent and stationary. Based on this medical report, Lauher entered into a stipulation with his employer and the employer's adjusting agency, State Compensation Insurance Fund (SCIF), concluding he had suffered a compensable industrial injury to his psyche causing temporary disability, and that this injury produced a permanent disability of 23 percent, compensable at $140 per week, to a total of $11,970. The stipulation further stated that "[t]here IS a need for medical treatment to cure or relieve from the effects of said injury. As specified in the report of Donald Houts, M.D., dated 05/12/97."

The workers' compensation judge (WCJ) thereafter accepted the stipulation and denied Lauher's additional claims for penalties under section 132a based on allegations that his supervisor had made harassing telephone calls to Lauher and his family, and that employer, before agreeing to the stipulation, had discriminated against Lauher by requiring that he use accrued sick and vacation time for absences to attend medical appointments. The WCJ denied a petition for reconsideration, as did the Workers' Compensation Appeals Board (WCAB or the Board).

After agreeing to the stipulation, Lauher returned to work. He also continued to see Dr. Houts for treatment. Dr. Houts was available for appointments only during regular business hours. Lauher's round-trip journey from his office to Dr. Houts's office is 58 miles. Depending on the traffic, it took Lauher between two and one-half hours to four hours to drive to Dr. Houts's office, have a session with him, and return to Lauher's place of employment. Employer informed Lauher he would not be paid his full salary unless he took sick leave or vacation time for time spent away from his office seeing Dr. Houts. Lauher used close to 200 hours of either sick leave or vacation time to cover his medical appointments with Dr. Houts.

Lauher then filed the petition that forms the basis of this case, seeking reimbursement for the sick and vacation leave his employer docked him for time he spent seeing Dr. Houts for poststipulation treatment, as well as penalties for discrimination pursuant to section 132a. SCIF responded and explained that it had paid Lauher industrial disability leave and TDI for his period of temporary disability, but that he was not entitled to receive either benefit in the future because his industrial injury had become permanent and stationary. Because, according to the stipulation, Lauher was entitled to

"future medical treatment," SCIF alleged that employer "continues to provide" for such treatment and denied any discrimination: "[Employer] has not discriminated against the applicant regarding non-reinstatement/reimbursement of leave time. The Employer's policy in this regard is based on good faith business necessity and has been universally applied in industrial and non-industrial injuries."

The WCJ ruled that Lauher "established a nexus between his industrial injury and [his employer's] conduct of requiring him to take sick leave to attend doctor's appointments." Specifically, citing section 4600, the WCJ ruled that Lauher was "entitled to workers' compensation benefits in the form of medical treatment" and that includes " 'all reasonable expenses of transportation, meals and lodging' and 'one day of temporary disability indemnity for each day of wages lost. . . .' The worker's permanent and stationary status has no bearing on his entitlement to receive treatment. Labor Code § 4600 does not say that the worker will be considered temporarily disabled on the day that he goes for treatment, but it says that the worker will be entitled to receive temporary disability indemnity for each day of lost wages. If a worker goes for treatment and must miss time from work, the worker should not be assessed sick leave but, rather, should be paid at the temporary disability rate for the time lost." Further, the WCJ held employer had not established that a good faith business necessity justified docking Lauher's sick leave under these circumstances and concluded employer had unlawfully discriminated against Lauher. Accordingly, the WCJ ordered employer to pay a penalty of 10 percent "of the cost of all past, present and future medical treatment in this case" and also ordered employer to pay Lauher $10,000 for violating section 132a. The WCJ thereafter denied a petition for reconsideration; the WCAB, over one dissent, affirmed.

The Court of Appeal disagreed with the WCAB, finding Lauher had not met his burden of presenting a prima facie case of discrimination under section 132a. Accordingly, the appellate court annulled the WCAB's decision. We granted Lauher's petition for review.

DISCUSSION

A. *Background*

More than 90 years ago, our Legislature was directed to "create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party." (Cal. Const., former art. XX, § 21, added Oct. 10, 1911.) This language was modified by an

amendment adopted on November 5, 1918,[3] which is in the current state Constitution, as renumbered, without substantive change. (Cal. Const., art. XIV, § 4.) The Legislature complied with this directive by enacting various provisions of the Labor Code. This statutory scheme "rest[s] on the underlying notion that the common-law remedy [for industrial injuries to workers], with the requirements of proof incident to that remedy, involves intolerable delay and great economic waste, gives inadequate relief for loss and suffering, operates unequally as between different individuals in like circumstances, and that, whether viewed from the standpoint of the employer or that of the employee, it is inequitable and unsuited to the conditions of modern industry." (*Western Indemnity Co. v. Pillsbury* (1915) 170 Cal. 686, 693 [151 P. 398].) "[T]he theory of [the workers' compensation] legislation is that the risk of injury to workmen in the industries governed by the law should be borne by the industries, rather than by the individual workman alone. As the ultimate result, the burden imposed in the first instance upon the employer, will, it is said, be distributed, as part of the cost of production, among the consuming public." (*Id.* at p. 694.)

"This system attempts to assure employees of an expeditious remedy both adequate and certain, independent of any fault on the part of employees and employers. At the same time, it provides the employer with a liability which is determinable within defined limits. It represents a philosophy that industry, as a cost of doing business, should provide for the care and rehabilitation of workers disabled by work injuries. In this way, society supports the program as a[n] integral element of commerce and industry, rather than through tax-supported plans." (1 Herlick, Cal. Workers' Compensation Law (6th ed. 2001) § 1.01[4], p. 1-4.)

In creating and maintaining a system of workers' compensation, the people of this state made an important public policy decision and transformed how we address workplace injuries. It should be remembered, however, that the purpose of an award under the workers' compensation scheme " 'is not to make the employee whole for the loss which he has suffered but to prevent him and his dependents from becoming public charges during the period of his disability. . . . In short the award transfers a portion of the loss suffered by the disabled employee from him and his dependents to the consuming public. . . . Complete protection is not afforded the employee from disability because this would constitute an invitation to malinger or to be careless on the job as he would then lose nothing in assuming a disabled

---

[3]The 1918 amendment provided in part that the Legislature should "create, and enforce a complete system of workmen's compensation, by appropriate legislation . . . ." (Cal. Const., former art. XX, § 21, as amended Nov. 5, 1918.)

status.' " (*Universal City Studios, Inc. v. Worker's Comp. Appeals Bd.* (1979) 99 Cal.App.3d 647, 660 [160 Cal.Rptr. 597].)

■ Once an injured worker is awarded compensation for an industrial injury and that award is affirmed by the Board, our review of that decision is limited. As to findings of fact, we defer to the Board's findings if supported by substantial evidence. (§ 5952;[4] *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14].) While we accord " 'significant respect' " to the Board's interpretation of statutes in the area of workers' compensation (*Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1174 [77 Cal.Rptr.2d 552, 959 P.2d 1228] (*Avalon*)), we subject the Board's conclusions of law to de novo review (*Barnes v. Workers' Comp. Appeals Bd.* (2000) 23 Cal.4th 679, 685 [97 Cal.Rptr.2d 638, 2 P.3d 1180]; see *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] ["Questions of statutory interpretation are, of course, for this court to decide"]).

The Legislature, by enacting section 3202, has helped frame the issue of review by an appellate court. That section provides that issues of compensation for injured workers "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." Thus, " '[a]lthough the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor . . . , and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. [Citation.] *This rule is binding upon the board and this court.*' " (*Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280 [113 Cal.Rptr. 162, 520 P.2d 978].) Moreover, whether an employee's injury arose out of his employment is not the only question subject to this rule: "All aspects of workers' compensation law . . . are to be liberally construed in favor of the injured worker." (*Save Mart Stores v.*

---

[4]Section 5952 provides: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) The order, decision, or award was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

*Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597].)

With this standard of review in mind, we turn to the first issue posed in this case: Was Lauher entitled to TDI to reimburse him for wages lost while pursuing medical treatment for a permanent and stationary industrial injury?

B. *Entitlement to TDI to Replace Wages Lost Attending Medical Appointments for Treatment of a Permanent and Stationary Injury*

■ Lauher contends that "as a necessary means to the end of ensuring prompt medical treatment [pursuant to section 4600], [an] employee is entitled to temporary total disability indemnity for the time lost from work while attending necessary medical treatment." As we explain, because his industrial injury had become permanent and stationary, he was no longer entitled to receive TDI.

■ Two of the types of benefits available to the worker injured on the job are temporary disability indemnity, or TDI, and permanent disability indemnity, or PDI. Although both take the form of financial benefits, "[i]t must be remembered that temporary disability indemnity and permanent disability indemnity were intended by the Legislature to serve entirely different functions. Temporary disability indemnity serves as wage replacement during the injured worker's healing period for the industrial injury. [Citation.] In contrast, permanent disability indemnity compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have been attained. [Citation.] Permanent disability serves to assist the injured worker in his adjustment in returning to the labor market. [Citation.]" (*Maples v. Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827, 836 [168 Cal.Rptr. 884]; see also *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328].)

■ That TDI is intended as wage replacement is inferable from section 4653, which requires temporary total disability be calculated as "two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market." Because "[t]emporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income" (*J. T. Thorp, Inc. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 333 [200 Cal.Rptr. 219]; *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.*, *supra*, 34 Cal.3d at p. 168), an employer's obligation to pay TDI to an injured worker ceases when such

replacement income is no longer needed. Thus, the obligation to pay TDI ends when the injured employee either returns to work (*Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355]; see also § 4651.1) or is deemed able to return to work (*Bethlehem Steel Co. v. Ind. Acc. Com.* (1942) 54 Cal.App.2d 585, 586-587 [129 P.2d 737]), or when the employee's medical condition achieves permanent and stationary status (*Industrial Indem. Exch. v. Ind. Acc. Com.* (1949) 90 Cal.App.2d 99 [202 P.2d 850]; see generally *Kopitske v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 623, 631 [88 Cal.Rptr.2d 216]; *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179 [29 Cal.Rptr.2d 722]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Peterson et al. edits., 2002) § 7.02[1], p. 7-7 (Hanna)).

■ By contrast, section 4650 provides that the first permanent disability payment must be made by the employer within "14 days after the date of the last payment of temporary disability indemnity." From this, we may infer the Legislature anticipates an employer has no legal obligation to pay PDI until the obligation to pay TDI has ceased. Accordingly, we held in *LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234 [193 Cal.Rptr. 547, 666 P.2d 989] that "[t]he right to permanent disability compensation does not arise until the injured worker's condition becomes 'permanent and stationary.'" (*Id.* at p. 238, fn. 2.) "A disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 10152; see *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1422, fn. 3 [118 Cal.Rptr.2d 105]; 1 Hanna, *supra*, § 8.03, pp. 8-16 to 8-17.)

■ That Lauher's industrial injury was permanent and stationary is undisputed. Lauher's physician, Dr. Houts, so reported, and Lauher entered into a stipulation with SCIF to that effect. That Lauher had returned to work is also undisputed. Under these circumstances, we conclude he was not entitled to any further TDI payments to compensate him for wages lost due to his attending medical appointments during the workday. "An injured employee cannot be temporarily and permanently disabled at the same time; thus, permanent disability payments do not begin until temporary disability payments cease." (*City of Martinez v. Workers' Comp. Appeals Bd.* (2000) 85 Cal.App.4th 601, 609 [102 Cal.Rptr.2d 588]; see also *Ritchie v. Workers' Comp. Appeals Bd., supra*, 24 Cal.App.4th at p. 1180 [same]; *New Amsterdam Cas. Co. v. Ind. Acc. Com.* (1951) 108 Cal.App.2d 502, 507 [238 P.2d 1046] [same]; 1 Hanna, *supra*, § 7.02[1], p. 7-8 [same].) Here, Lauher had passed out of the healing period (for which TDI serves as a wage replacement) and had agreed to a stipulation compensating him for his diminished

ability in the workplace due to a permanent and stationary injury. Because Lauher had begun collecting PDI, he was no longer entitled to TDI.

Lauher's counterarguments are not persuasive. As did the WCJ, he first relies on section 4600, which relates generally to medical and hospital treatment for an injured worker. That section provides in pertinent part that "Medical, surgical, chiropractic, acupuncture, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including orthotic and prosthetic devices and services, that is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer." He contends that section 4600 should be liberally construed to include replacement of lost wages occasioned by an employee's medical treatment. Although he is correct that "[t]he Legislature intended that section 4600 shall be liberally interpreted in favor of the employee's right to obtain reimbursement" (*McCoy v. Industrial Acc. Com.* (1966) 64 Cal.2d 82, 86 [48 Cal.Rptr. 858, 410 P.2d 362]; *Rodriguez v. Workers' Comp. Appeals Bd.* (1994) 21 Cal.App.4th 1747, 1758 [27 Cal.Rptr.2d 93]), he is incorrect that even a liberal interpretation of section 4600 will extend so far as to authorize the payment of *temporary* disability indemnity to replace lost wages when an injury has become *permanent* and stationary.

Lauher apparently would have us analogize the right to reimbursement for sick and vacation leave used for seeking continuing treatment for a permanent and stationary industrial injury to the right to reimbursement for transportation costs. Citing *Avalon, supra,* 18 Cal.4th 1165, *Hutchinson v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 372 [257 Cal.Rptr. 240], and *Bundock v. Herndon and Finnigan* (1923) 10 I.A.C. 32, Lauher contends that because section 4600 has been construed liberally to compensate an injured worker for transportation costs associated with obtaining medical treatment, we similarly should conclude he is entitled to TDI to compensate him for wages lost while seeking treatment with Dr. Houts. We disagree because the two situations are not comparable. In *Avalon,* we observed that although section 4600 "does not expressly refer to medical treatment transportation expenses as an aspect of medical treatment benefits, they have consistently been so regarded under the workers' compensation laws. [Citations.]" (*Avalon, supra,* at p. 1173.) "The board's practice . . . of awarding medical treatment transportation expenses," we observed, "is of long standing," noting that such benefits have been paid "[a]s early as 1923." (*Id.* at p. 1174.) No comparable precedent exists for compensating an injured employee for his wage loss once his injury becomes permanent and stationary.

Nor is Lauher's claim for TDI to offset the associated wage loss he would incur should he fail to use his sick and vacation leave during his appointments with Dr. Houts supportable as a conceptual matter. Lauher argues that

"[i]t necessarily [follows] that if an injured worker *loses wages* from attending necessary and mandated . . . medical treatment, there is a resultant chilling effect on the injured worker's ability to obtain medical treatment." (Italics added.) We disagree and reiterate that although TDI is intended as a wage replacement while the injured worker is healing from his injury, once the injury becomes permanent and stationary and/or the employee returns to work, any future benefits authorized by the workers' compensation scheme are not intended as wage replacement. The worker is provided medical benefits, including reimbursement for transportation costs (*Avalon, supra*, 18 Cal.4th 1165), during the healing period in order to enable him to return to productive employment and to prevent him from becoming a public charge. Once he returns to work, in addition to the wages he earns, he is also compensated in the form of PDI for the permanent diminution of his abilities caused by his industrial injuries. ■ The system of workers' compensation is not intended to provide full and total recompense for any and all consequences of a worker's injury, but instead represents a compromise between the interests of workers and those of employers. As the Court of Appeal reasoned below, quoting *Mead v. Diamond International Corporation* (1974) 39 Cal.Comp.Cases 1, 4: " '[I]n compensation practice day in and day out employees are totally uncompensated for wages lost while attending to medical treatment during their work day. It has long been considered that in exchange for that blanket coverage of compensation without regard to fault, the employee bears some of the burden.' " (Quoting the trial referee in *Mead.*) We agree.[5]

■ Although Lauher relies on specific language in section 4600 mentioning reimbursement for transportation expenses, such language applies to a specific and discrete situation not present in this case. Thus, the second paragraph of section 4600 provides in part: "*Where at the request of the employer, the employer's insurer, the administrative director, the appeals board, or a workers' compensation judge*, the employee submits to *examination* by a physician, he or she shall be entitled to receive in addition to all other benefits herein provided all reasonable expenses of transportation, meals, and lodging incident to reporting for the examination, *together with one day of temporary disability indemnity for each day of wages lost in submitting to the examination.*" (Italics added.) Contrary to the views of both Lauher and the WCJ below, this specific statutory benefit is not a broad obligation to pay TDI to replace an employee's wages for time away from

[5]For the same reason, we reject the argument by amicus curiae California Applicants' Attorneys Association that, even if Lauher is not entitled to TDI in this situation, he is nonetheless entitled to some form of wage replacement using TDI as the "measure of recovery."

work while pursuing medical treatment for a permanent and stationary injury. Rather, this benefit is in the nature of a medical-legal benefit, reimbursing the employee for his time when requested to submit to a medical examination to resolve a compensation claim. Lauher cannot take advantage of this benefit, both because his semi-regular treatment with Dr. Houts is not undertaken at the request of one of the enumerated entities, such as his employer or SCIF, and because his appointments with Dr. Houts are for continuing treatment, not for an "examination" connected with resolving an application for benefits.

Finally, Lauher argues the Schedule of Administrative Penalties, Administrative Director Rule 10111.1(a)(4), which is codified in California Code of Regulations, title 8, section 10111.1, subdivision (a)(4) (hereafter rule 10111.1), indicates the Legislature's intent that section 4600 be interpreted broadly enough to authorize payment of TDI to reimburse an employee for time away from work seeking medical treatment even though the employee's injury has become permanent and stationary. The Board accepted this argument as further support for awarding TDI to reimburse Lauher for time spent out of the office seeking treatment with Dr. Houts, but, with due respect to the Board, we do not.

Section 129, subdivision (a) provides in part: "To make certain that injured workers, and their dependents in the event of their death, receive promptly and accurately the full measure of compensation to which they are entitled, the administrative director shall audit insurers, self-insured employers, and third-party administrators to determine if they have met their obligations under this code." In connection with this auditing procedure, section 129.5, subdivision (a) provides in pertinent part: "The administrative director may assess an administrative penalty against an insurer, self-insured employer, or third-party administrator for [enumerated failings]." Finally, section 129.5, subdivision (b) requires the administrative director to "promulgate regulations establishing a schedule of violations and the amount of the administrative penalty to be imposed for each type of violation."

Pursuant to this legislative delegation, the Labor Department's administrative director promulgated rule 10111.1(a)(4). That provision sets forth a schedule of graduated financial penalties for failures to pay enumerated benefits. In particular, rule 10111.1(a)(4) provides: "The penalty for each failure to pay mileage fees and bridge tolls when notifying the employee of a medical evaluation scheduled by the claims administrator, in accordance with Labor Code Sections 4600 through 4621; or to pay mileage fees and bridge tolls within 14 days of receiving notice of a medical evaluation

scheduled by the administrative director or the appeals board; or to object or pay the injured worker for any other transportation, *temporary disability*, meal or lodging expense *incurred to obtain medical treatment* or evaluation, within 60 days of receiving a request, is: [¶] $25 for $10 or less in expense; [¶] $50 for more than $10, to $50, in expense; [¶] $75 for more than $50, to $100, in expense; [¶] $100 for more than $100 in expense." (Italics added.)

Lauher contends this administrative rule, with its specific mention of "temporary disability," supports his view that the Legislature intended section 4600 be interpreted to authorize the payment of TDI as a replacement for wages an employee loses while pursuing medical treatment for an industrial injury that has become permanent and stationary. No basis for such a conclusion exists. Read as a whole, rule 10111.1(a) addresses several distinct situations. For example, rule 10111.1(a)(1) addresses the failure to pay the self-imposed penalty for a late indemnity payment pursuant to section 4650, subdivision (d). Rule 10111.1(a)(2) addresses the failure to begin paying permanent disability indemnity in a timely fashion. Rule 10111.1(a)(3) addresses the failure timely to reimburse a worker for self-procured medical treatment.

At issue here is rule 10111.1(a)(4). That subsection addresses the failure to pay transportation and associated costs in certain enumerated situations. Thus, it first prescribes an administrative penalty for failing to pay mileage and tolls "when notifying the employee of a medical *evaluation* scheduled by the claims administrator." (Italics added.) Such an evaluation would typically occur during the healing period when a worker would claim entitlement to TDI, but it could also occur at other times, for example, when the employee's ability to return to work is undisputed but disagreement exists over the degree of the permanent injury, in which case further medical evaluations may be necessary. Nevertheless, although Labor Code section 4600 specifically provides for payment of transportation expenses and temporary disability when the evaluation is performed at the request of, for example, the employer or the employer's insurer, neither this clause of rule 10111.1(a)(4) nor Labor Code section 4600 authorizes TDI or wage replacement where, as here, an employee seeks medical treatment for a permanent injury.

The second clause of rule 10111.1(a)(4), which sets forth the administrative penalty for failure to pay mileage and tolls "within 14 days of receiving notice of a medical evaluation scheduled by the administrative director," similarly fails to mention wage replacement. Here, too, the medical evaluation referred to would typically occur during the healing period to determine

the nature and extent of a worker's injury in connection with an application for benefits. In the less frequent situation of a medical evaluation conducted after an injury is permanent and stationary, the requirement that the evaluation be "scheduled by the administrative director" would bring the case within the specific language of Labor Code section 4600, which provides for payment of transportation expenses and TDI when submitting to an "examination" at the "request" of "the administrative director." Again, there is no mention in this clause of TDI or wage replacement where the employee seeks medical treatment on his own.

Finally, rule 10111.1(a)(4) prescribes a penalty for the "failure . . . to object or pay the injured worker for any other transportation, temporary disability, meal or lodging expense incurred to obtain medical *treatment* or *evaluation*, within 60 days of receiving a request." (Italics added.) This clause of rule 10111.1(a)(4) differs from the first two clauses in two respects. First, unlike the two previous clauses, this clause refers to both "treatment" and "evaluation." Second, it specifically mentions "temporary disability." Although the mention of "treatment" could refer to medical care after a worker's industrial injury becomes permanent and stationary, it seems unlikely the administrative director, exercising delegated legislative powers, intended to authorize payment of TDI to replace wages an employee loses while pursuing medical treatment for a permanent and stationary injury, absent any statutory authorization for such a benefit. Moreover, the mere mention of "temporary disability" in rule 10111.1(a)(4) is insufficient to create a benefit untethered to any statutory authorization. In short, rule 10111.1(a)(4) does not speak at all to the question whether an injured worker is entitled to TDI to compensate him for wages lost while seeking medical treatment *once his injury has become permanent and stationary.*

In sum, we find no authority for the proposition that an injured worker is entitled to payment of TDI to reimburse him for wages lost while pursuing medical treatment for an industrial injury once that injury has become permanent and stationary. On the contrary, once the employee's injury is permanent and stationary and, as here, the employee returns to work, he is no longer entitled to TDI. Exercising independent review on this legal question (*Barnes v. Workers' Comp. Appeals Bd., supra,* 23 Cal.4th at p. 685), we find the Board erred in ruling otherwise.

C. *Discrimination Pursuant to Section 132a*

Lauher next claims that his employer discriminated against him within the meaning of section 132a because he had suffered an industrial

injury. This discrimination, he claims, took the form of his employer's insistence that he use his accumulated sick and vacation leave for the time he was out of the office seeing Dr. Houts for treatment of his injury. Lauher claims he was thus "treated differently than other employees who had not sustained a work-related injury . . . ."[6]

Section 132a provides: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, *or in any manner discriminates* against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and *reimbursement* for lost wages and *work benefits* caused by the acts of the employer." (Italics added.) No criminal penalty is at issue in this case; we address only the Board's imposition of a $10,000 administrative penalty on Lauher's employer.

■ "[T]o warrant an award [pursuant to section 132a] the employee must establish at least a prima facie case of lost wages and benefits caused by the discriminatory acts of the employer." (*Dyer v. Workers' Comp. Appeals Bd.* (1994) 22 Cal.App.4th 1376, 1386 [28 Cal.Rptr.2d 30].) The employee must establish discrimination by a preponderance of the evidence (*Western Electric Co. v. Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 629, 640 [160 Cal.Rptr. 436]), at which point the burden shifts to the employer to establish an affirmative defense (*Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 531 [266 Cal.Rptr. 503]). Although we defer to the Board's determination of facts if supported by substantial evidence, we review the Board's legal decisions de novo, for "[i]t is for the court to decide whether the facts found by the Board constitute a violation of section 132a." (*Id.* at pp. 530-531.)

■ To decide the merits of Lauher's claim, we must decide what section 132a means when it refers to "discrimination." As one appellate

---

[6]Although Lauher argued in the Court of Appeal that this discrimination also took the form of failure to pay him TDI for his time away from work seeing Dr. Houts, it does not appear he has renewed that claim in this court. In any event, as we find he was not entitled to TDI once his industrial injury became permanent and stationary, SCIF cannot be found to have discriminated against him by failing to pay TDI in this circumstance.

court has noted, "[n]either the Legislature nor the courts have fashioned a clear rule for distinguishing those forms of discrimination which are actionable under section 132a and those forms which are not." (*Smith v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 1104, 1108 [199 Cal.Rptr. 881] (*Smith*).) Nevertheless, some boundary markers have been delineated. Under its express terms, an employer may not "discharge[], or threaten[] to discharge" an employee because, like Lauher, he has filed a claim for compensation. Moreover, citing the prefatory statement that "[i]t is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment" (§ 132a), we have explained that the type of discriminatory actions subject to penalty under section 132a is not limited to those enumerated in the statute. Instead, we have interpreted section 132a liberally to achieve the goal of preventing discrimination against workers injured on the job. (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666-669 [150 Cal.Rptr. 250, 586 P.2d 564].) We immediately cautioned, however, that "[s]ection 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." (*Id.* at p. 667.)

Noting this last passage, the court in *Smith, supra,* 152 Cal.App.3d 1104, held that "save for the two exceptions just described [i.e., reemploying employees who are unqualified or for whom no position is available], action *which works to the detriment of the employee* because of an injury is unlawful under section 132a." (*Id.* at p. 1109, italics added.) This test of "detriment" to the employee was accepted as the applicable standard in *Barns v. Workers' Comp. Appeals Bd., supra,* 216 Cal.App.3d at page 531 ("a worker proves a violation of section 132a by showing that as the result of an industrial injury, the employer engaged in conduct detrimental to the worker") as well as by at least one commentator (1 Hanna, *supra,* § 10.11[1], p. 10-20 ["[t]he critical question is whether the employer's action caused detriment to an industrially-injured employee"]).

The Court of Appeal in this case, however, found the *Smith* formulation "analytically incomplete." The court explained that, although Lauher had clearly suffered a detriment by having to use his accumulated sick leave and vacation time for his visits to see Dr. Houts, he never established he "had a legal *right* to receive TDI and retain his accrued sick leave and vacation time, and that [his employer] had a corresponding legal *duty* to pay TDI and

refrain from docking the sick leave and vacation time."[7] Thus, said the court, "[t]o meet the burden of presenting a prima facie claim of unlawful discrimination in violation of section 132a, it is insufficient that the industrially injured worker show only that . . . he or she suffered some adverse result as a consequence of some action or inaction by the employer that was triggered by the industrial injury. The claimant must also show that he or she had a legal right to receive or retain the deprived benefit or status, and the employer had a corresponding legal duty to provide or refrain from taking away that benefit or status."

We agree that for Lauher merely to show he suffered an industrial injury and that he suffered some detrimental consequences as a result is insufficient to establish a prima facie case of discrimination within the meaning of section 132a. As we explained, *ante*, our system of workers' compensation does not provide a make-whole remedy. ▮ "The Workers' Compensation Law is intended to award compensation for *disability* incurred in employment. 'The purpose of the award is not to make the employee whole for the loss which he has suffered but to prevent him and his dependents from becoming public charges during the period of his disability.' " (*Universal City Studios, Inc. v. Worker's Comp. Appeals Bd., supra,* 99 Cal.App.3d at pp. 659-660,) "The purpose of workmen's compensation is to rehabilitate, not to indemnify, and its intent is limited to assuring the injured workman subsistence while he is unable to work and to effectuate his speedy rehabilitation and reentry into the labor market." (*Solari v. Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 600 [30 Cal.Rptr. 407].) Consistent with this view, for example, section 4653 provides that payment for temporary total disability is only "two-thirds of the average weekly earnings during the period of such disability."

▮ An employer thus does not necessarily engage in "discrimination" prohibited by section 132a merely because it requires an employee to shoulder some of the disadvantages of his industrial injury. By prohibiting "discrimination" in section 132a, we assume the Legislature meant to prohibit treating injured employees differently, making them suffer disadvantages not visited on other employees because the employee was injured or had made a claim.

Lauher claims he was subjected to discrimination within the meaning of section 132a because he "was treated differently than other employees who had not sustained a work-related injury and were not under the mandates of

---

[7]As noted, *ante,* Lauher no longer claims he is entitled to a penalty under section 132a due to his employer's failure to pay TDI.

the Labor Code." He claims "[t]he employer's actions were directly related to the work injury and the resultant time the injured employee had to miss from work because of the medical appointments to cure or relieve the effects of the work injury." Lauher's argument fails to appreciate that, although his injury was industrial, nothing suggests his employer *singled him out for disadvantageous treatment because of the industrial nature of his injury.* We assume that employees with nonindustrial injuries must follow the same rule and use their sick leave when away from the office attending medical treatment. Certainly nothing Lauher alleges suggests otherwise. For example, he does not allege he alone is being singled out for the requirement that he use his sick leave, or that other employees are permitted to leave the office for medical appointments related to nonindustrial injuries and are not required to use their sick leave.

Because Lauher does not allege that other employees are permitted to be away from their workplace for medical care yet need not use their sick leave if they wish to be paid their full salaries, we conclude Lauher fails to demonstrate he was the victim of discrimination within the meaning of section 132a. To hold otherwise would elevate those who had suffered industrial injuries to a point where they enjoyed rights superior to those of their coworkers. Nothing in the history or meaning of section 132a's anti-discrimination rule supports such an interpretation.[8]

CONCLUSION

The decision of the Court of Appeal annulling the decision of the Board is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.

---

[8]Because we find Lauher failed to establish a prima facie case of discrimination within the meaning of section 132a, we need not address SCIF's contention that employer had a legitimate business reason for requiring Lauher to use his sick leave and vacation time when away from the office seeing Dr. Houts for treatment. For the same reason, we also decline to address the argument by amicus curiae California Employment Law Council that we should reexamine and discard the holding of *Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 658, that section 132a should be liberally construed in favor of injured workers. We also decline to address the invitation to reinterpret section 132a to require proof of discriminatory intent. These arguments are not necessary to resolve the present matter and, in any event, were not raised by any party or amicus curiae before the WCJ, the WCAB, or the Court of Appeal.