[No. B209336. Second Dist., Div. Three. Nov. 13, 2009.]

GELSON'S MARKETS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and PAUL FOWLER,
Respondents.

## COUNSEL

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., Molly A. Harcos; Law Offices of Daniel P. Goggins and Daniel P. Goggins for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Goldschmid, Silver & Spindel and Lawrence Silver for Respondent Paul Fowler.

William A. Herreras for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Paul Fowler.

## OPINION

## KITCHING, J.—

### INTRODUCTION

Labor Code section 132a[1] penalizes an employer who discriminates "in any manner" against an employee who has filed a workers' compensation claim or received a rating, award, or settlement. An employer, Gelson's Markets (Gelson's), petitions this court pursuant to section 5950 seeking annulment of a Workers' Compensation Appeals Board (WCAB) decision and award which found Gelson's liable for discrimination against an industrially

---

[1] Unless otherwise specified, statutes in this opinion will refer to the Labor Code.

injured employee, Paul Fowler, because Gelson's did not accept a physician's release to allow Fowler to return to work. In making this determination, the WCAB did not apply the standard established by the California Supreme Court in *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*). To establish a prima facie case of discrimination prohibited by section 132a, an employee must show that he suffered an industrial injury and that the employer caused him to suffer some detrimental consequence as a result. The employee must also show that the employer singled out the industrially injured worker for disadvantageous treatment because of the industrial nature of his injury, and treated the industrially injured employee differently by making him suffer disadvantages not visited on other employees because the employee was industrially injured or had made a workers' compensation claim. Fowler failed to make a prima facie case of discrimination against Gelson's under this standard. The WCAB award finding Gelson's liable for discrimination pursuant to section 132a must therefore be annulled.

## FACTUAL AND PROCEDURAL HISTORY

Applicant Paul Fowler worked as an order puller/machine operator for Gelson's. He sustained an industrial injury to his neck, and his treating physician, Frank Badin, M.D., took him off work on August 3, 2004. On March 1, 2005, a neurosurgeon performed a cervical fusion on Fowler. His claim of industrial injury to his neck while working for Gelson's was addressed by the April 19, 2007, entry of a stipulated award of 20 percent permanent disability and future medical treatment.

Fowler inquired about returning to work, and produced a release for activity permit from Dr. Badin. The permit stated that Fowler could return to work on June 27, 2005, with his use of a forklift and Raymond Reach-Fork Truck limited to one hour per day. Kelli Garcia, a Gelson's risk manager who managed workers' compensation and insurance for injured workers, received Dr. Badin's release for Fowler. Garcia thought the note was not clear and did not provide Gelson's with enough information about Fowler's restrictions. Garcia testified that she needed to make sure Fowler was capable of performing all functions of his job, and the release specified only a small and insignificant aspect of Fowler's job. Garcia needed to make sure that Dr. Badin had Fowler's physical job description and knew what Fowler's work for Gelson's involved. She therefore telephoned Dr. Badin, and asked him if he had the job description of Fowler's job functions; Dr. Badin said he thought he did but was not sure. Dr. Badin also told Garcia that he really did not feel Fowler should be returned to work, and thought Fowler should stay temporarily totally disabled.

After talking to Dr. Badin, Garcia advised Fowler on June 24, 2005, that Gelson's was not able to accommodate these restrictions. Garcia then received a second release for activity from Dr. Badin, dated June 27, 2005. It stated that Fowler could return to work with "no restrictions." Garcia believed something was wrong, given Dr. Badin's first note containing a restriction and his statement that he thought Fowler should be temporarily totally disabled. On July 6, 2005, Garcia wrote a letter to Dr. Badin stating that Gelson's could not return Fowler to work, and stating that the two release for activity forms Fowler had submitted from Dr. Badin "are both confusing and inconsistent based on his recent [March 2005] major surgery. Upon calling your office for clarification, we were given no medically supported explanation for the change in Mr. Fowler's restrictions over the seven (7) day period and in particular the second note did not explain the apparent contradiction with the first note." Garcia's letter requested that Dr. Badin review the job description of the physical requirements of Fowler's job, and comment on Fowler's ability to perform essential job functions with or without an accommodation, before Gelson's could determine whether to return Fowler to work. Garcia testified that Gelson's needed to know Fowler's restrictions if he was not ready to return to full duty, and needed to be certain Fowler had no further injury. Garcia's letter to Dr. Badin stated: "Specifically, can Mr. Fowler perform the essential functions of the job of Order Selector, either with or without reasonable accommodation?"

Dr. Badin responded in a July 18, 2005, letter: "I reviewed the description of employee's job duties with Mr. Paul Fowler. Mr. Fowler is of the impression that he can carry out his job duties. Mr. Fowler is, therefore, released to return to his job as a stacker machine operator/order selector with no restrictions." Garcia did not return Fowler to work after receiving Dr. Badin's letter, because in their previous conversation Dr. Badin told Garcia that he did not want to return Fowler to work but Fowler wanted to work. On July 20, 2005, Garcia wrote to Dr. Badin that Gelson's did not accept Dr. Badin's July 18, 2005, letter because it said Fowler felt he was able to return to work and therefore he should be able to return to work. Garcia wanted Dr. Badin's expert medical opinion about whether Fowler could return to work and with what restrictions. Garcia never received that expert medical opinion from Dr. Badin, who stopped responding and did not return Garcia's phone calls.

Fowler and Gelson's agreed to submit Fowler to an agreed medical examiner, Dr. Angerman. After examining Fowler, Dr. Angerman served Gelson's with a copy of his report on September 22, 2006. The report stated that Fowler retained factors of permanent disability regarding the cervical spine. These included intermittent minimal to slight pain on most occasions, becoming more than slight and occasionally slight to moderate with prolonged motions of the cervical spine, and decreased range of motion of the

cervical spine. With regard to work restrictions, Dr. Angerman stated: "I do not feel he requires formal work restrictions referable to the cervical spine as he presents with a good surgical result following the single level decompression and fusion at the C5-6 level. From an orthopaedic standpoint, in all medical probability, it is felt the patient has lost 25% of his pre-injury capacity for lifting, pushing, pulling, prolonged motions of the cervical spine and prolonged overhead work activities." With regard to vocational rehabilitation, Dr. Angerman's report stated: "The patient states he feels capable of returning to his usual and customary job activities as described. It is felt that an attempt to return this patient to his usual and customary job duties is warranted, however, if there is any increase in his symptomatology then he would be a Qualified Injured Worker. I feel he should be given the option of returning to his usual and customary job activities. Therefore, the patient is not a Qualified Injured Worker and vocational rehabilitation is not indicated."

Garcia concluded that Dr. Angerman's report was inconclusive and that Gelson's needed clarification from Dr. Angerman. Dr. Angerman's report stated that Fowler should be given the option of returning to his usual job activities. In the previous paragraph Dr. Angerman gave no restrictions, but also said Fowler had lost 25 percent of his preinjury capacity. Garcia received no information about what Fowler's preinjury job capacities were for lifting, pushing, pulling, and prolonged motions, and needed clarification about what Fowler was currently able to lift. Garcia could not determine whether Fowler's loss of 25 percent of job capacity caused him to fall below the job requirements in Gelson's job description. Garcia did not return Fowler to work after Dr. Angerman's report, because as distinct from Fowler's opinion, Gelson's still had received no physician's medical opinion as to whether Fowler could return to work.

Dr. Angerman resolved the question in his December 1, 2006, deposition. Dr. Angerman testified that he thought Fowler could probably perform his usual and customary job. Based on Dr. Angerman's deposition testimony, Gelson's returned Fowler to work on January 8, 2007.

Fowler filed a petition for benefits and increased compensation under section 132a, claiming backpay from June 27, 2005, to January 6, 2007, and a $10,000 statutory penalty. The workers' compensation administrative law judge made findings. First, because Dr. Badin's June 20, 2005, and June 27, 2005, releases were ambiguous and contradictory and Garcia attempted to clarify these ambiguities with Dr. Badin, Gelson's failure to reinstate Fowler on June 27, 2005, did not violate section 132a. Second, because Dr. Angerman's report was not ambiguous as to Fowler's ability to return to work, Gelson's failure to reinstate Fowler after July 19, 2006, violated section 132a. Third, Fowler was entitled to increased compensation of $10,000 and reimbursement for lost wages from July 20, 2006, through January 6, 2007, less credit for any sums paid during this period.

Gelson's filed a petition for reconsideration, claiming that it did not discriminate against Fowler in violation of section 132a by refusing to reinstate him and that it did not receive clear information that Fowler was released to work without restrictions until September 26, 2006. The WCAB granted reconsideration to address the period of lost wages, and issued a decision on June 2, 2008. The WCAB found that Gelson's received an unambiguous release to work from the treating physician on July 20, 2005, but unreasonably refused to reinstate Fowler on that date. The WCAB amended the award to provide for reimbursement of lost wages for July 20, 2005, through January 6, 2007.

Pursuant to section 5950, Gelson's filed a petition in this court seeking issuance of a writ of review and an order annulling the WCAB findings, award, and decision after reconsideration. On August 6, 2008, this court issued a writ of review directing the WCAB to certify and return a copy of records and documents reviewed by the WCAB on Gelson's petition for reconsideration, giving the WCAB an opportunity to appear and to file a response to the petition for writ of review, and setting the matter for oral argument.

## ISSUES

Petitioner Gelson's claims that:

1. The WCAB decision rests on a definition of discrimination in violation of section 132a which the California Supreme Court has rejected and replaced; and

2. Section 132a requires a prima facie showing of disparate treatment, and the WCAB erred as a matter of law in imposing liability pursuant to section 132a because there was no evidence of disparate treatment.

## DISCUSSION

### 1. *Standard of Review*

Section 5952 sets forth the standard of review of a petition filed pursuant to section 5950: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) The order, decision, or award was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

"Although we defer to the Board's determination of facts if supported by substantial evidence, we review the Board's legal decisions de novo, for '[i]t is for the court to decide whether the facts found by the Board constitute a violation of section 132a.' " (*Lauher, supra*, 30 Cal.4th at p. 1298.) "While we accord ' "significant respect" ' to the Board's interpretation of statutes in the area of workers' compensation [citation], we subject the Board's conclusions of law to de novo review [citations]." (*Id.* at p. 1290.)

### 2. *Fowler Did Not Make a Prima Facie Showing of Gelson's Liability for Discrimination in Violation of Section 132a*

Gelson's claims that the WCAB erroneously imposed liability for discrimination pursuant to section 132a because Fowler presented no evidence of disparate treatment by Gelson's because of his industrial injury.

Section 132a states: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

"(1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

■ To warrant an award pursuant to section 132a, the employee must establish, by a preponderance of the evidence, at least a prima facie case of lost wages and benefits caused by the employer's discriminatory acts. If the employee makes that showing, the burden shifts to the employer to establish an affirmative defense. (*Lauher, supra,* 30 Cal.4th at p. 1298.)

The WCAB's June 2, 2008, decision after reconsideration stated: "In order to make a prima facia [*sic*] showing of discrimination the employee need only that [*sic*] action is taken by the employer to the injured worker's detriment." Some authority supported this statement. *Smith v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 1104, 1109 [199 Cal.Rptr. 881] concluded that "action which works to the detriment of the employee because of an injury is unlawful under section 132a." *Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524 [266 Cal.Rptr. 503], citing *Smith,* similarly stated that "a worker proves a violation of section 132a by showing that as the result of an industrial injury, the employer engaged in conduct detrimental to the worker." (*Id.* at p. 531.) In *Lauher,* however, the California Supreme Court added a new element to the prima facie case of discrimination which a worker must establish to show a violation of section 132a. (*Lauher, supra,* 30 Cal.4th at pp. 1300–1301.) The WCAB's decision in this case applied the former standard which *Lauher* replaced, failed to recognize *Lauher,* and did not apply the new standard *Lauher* established.

In *Lauher* an employer required an industrially injured employee to use sick leave when he was away from the office for medical treatment of his injury. (*Lauher, supra,* 30 Cal.4th at pp. 1287, 1298.) The employer also required employees with nonindustrial injuries to follow this rule. (*Id.* at p. 1301.) Because the industrially injured employee did not show that his employer treated him differently from nonindustrially injured employees and singled him out for disadvantageous treatment because of the industrial nature of his injury, the employee failed to establish a prima facie case of discrimination under section 132a and the employer was not liable under that statute. (*Lauher,* at pp. 1300–1301.)

■ Section 132a is interpreted liberally to achieve the goal of preventing discrimination against workers injured on the job. This liberal interpretation, however, does not mean that any action by an employer that is detrimental to the industrially injured employee violates section 132a. (*Lauher, supra,* 30 Cal.4th at p. 1300.) For such an employee "merely to show he suffered an industrial injury and that he suffered some detrimental consequences as a result is insufficient to establish a prima facie case of discrimination within

the meaning of section 132a." (*Ibid.*) "An employer . . . does not necessarily engage in 'discrimination' prohibited by section 132a merely because it requires an employee to shoulder some of the disadvantages of his industrial injury. By prohibiting 'discrimination' in section 132a, we assume the Legislature meant to prohibit treating injured employees differently, making them suffer disadvantages not visited on other employees because the employee was injured or had made a claim." (*Ibid.*) The prohibited discrimination occurs when the injured worker's "employer single[s] him out for disadvantageous treatment because of the industrial nature of his injury." (*Id.* at p. 1301, italics omitted.) ■ Thus to establish a prima facie case of discrimination in violation of section 132a, the employee must show that he suffered an industrial injury, that the employer caused him to suffer some detrimental consequences as a result, and that the employer singled out the employee for disadvantageous treatment because of his injury. (*County of San Luis Obispo v. Workers' Comp. Appeals Bd.* (2005) 133 Cal.App.4th 641, 648 [34 Cal.Rptr.3d 690].)

*Andersen v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 1369 [57 Cal.Rptr.3d 839] illustrates the application of the *Lauher* standard. The employer in *Andersen* required industrially injured workers to use earned vacation time when attending medical appointments. By contrast, the employer allowed nonindustrially injured workers to use sick leave when attending medical appointments. (*Id.* at pp. 1378–1379.) By making the use of sick leave depend on whether a worker had an industrial or a nonindustrial injury, the employer treated industrially injured workers disparately and detrimentally, which was illegal discrimination that violated section 132a. (*Id.* at p. 1380.)

■ Here Fowler made no showing that Gelson's treated him differently from nonindustrially injured employees. That is, Fowler made no showing that Gelson's would have returned to work a nonindustrially injured employee whose physician provided the same releases, but discriminated against Fowler by not returning him to work. Fowler made no showing that Gelson's treated him disadvantageously because of the industrial nature of his injury, as compared to how Gelson's treated a nonindustrially injured employee. Thus he did not make a prima facie case of discrimination in violation of section 132a and did not shift the burden to Gelson's to establish an affirmative defense.

Therefore the WCAB award in favor of Fowler and his attorneys and against Gelson's should be annulled.

## DISPOSITION

The award of the Workers' Compensation Appeals Board is annulled. Costs on appeal are awarded to petitioner Gelson's.

Croskey, Acting P. J., and Aldrich, J., concurred.

The petition of respondent Paul Fowler for review by the Supreme Court was denied January 21, 2010, S178615.