[No. H029661. Sixth Dist. Nov. 21, 2006.]

AARON B. MATEA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and THE HOME
DEPOT, Respondents.

COUNSEL

Law Offices of Robert T. Bledsoe and Mason S. Bledsoe for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Laughlin, Falbo, Levy & Moresi and Mark Filippi for Respondent The Home Depot.

Guilford, Steiner, Sarvas & Carbonara, Frank E. Carbonara and Richard E. Guilford for California Insurance Guarantee Association and American Insurance Association as Amici Curiae on behalf of Respondent The Home Depot.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

### INTRODUCTION

Petitioner Aaron B. Matea sustained an admitted industrial injury when a rack of lumber fell on his left leg. In addition to his physical injury Matea alleged a resulting psychiatric injury, but at the time of his injury he had worked for respondent The Home Depot for less than six months. California's workers' compensation system is intended to guarantee compensation to employees injured in the course of their employment, but Labor Code section 3208.3, subdivision (d)[1] precludes compensation "for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months." An exception to this six-month rule is provided for psychiatric injuries that are "caused by a sudden and extraordinary employment condition." (§ 3208.3, subd. (d).) In

---

[1] All further statutory references are to the Labor Code.

this case, the workers' compensation judge (WCJ) found that Matea's injury was caused by "a sudden and extraordinary event." The Workers' Compensation Appeals Board (the Board) reversed that finding by the WCJ and found that it was Matea's burden to show that his psychiatric injury was caused by a sudden and extraordinary employment condition but, based on Matea's trial testimony, he did not meet his burden.

Matea has filed a timely petition for writ of review, contending that the Board erred when it reversed the WCJ's findings. In analyzing Matea's claim we must determine whether or not Matea met his burden of showing by a preponderance of the evidence that the circumstances under which his leg injury occurred constituted "a sudden and extraordinary employment condition" under section 3208.3, subdivision (d). We conclude, based on the limited record and factual findings of the Board before us, that Matea has met his burden and has established that he was injured during the first six months of his employment as a result of "a sudden and extraordinary employment condition" as required by section 3208.3, subdivision (d). Accordingly, we will annul the Board's decision.

## BACKGROUND

*Facts*

Eighteen-year-old Matea began working for The Home Depot in July 2001. On September 16, 2001, while working as a manager-trainee, Matea injured his left foot and ankle when all the lumber (12-foot four-by-fours) from a rack fell on him after the store closed.[2] He does not know how many pieces of lumber actually fell on his leg. He suffered a contusion and swelling but no fracture, and has been diagnosed with reflex sympathetic dystrophy. He worked in a restricted capacity after his leg injury for short periods of time.

---

[2] Pursuant to a ruling by the WCJ, the transcripts of Matea's deposition testimony attached as exhibits to The Home Depot's posttrial brief were considered admitted into evidence. During his April 8, 2002 deposition, Matea testified that his injury occurred when all the lumber fell on him as he tried to put a 12-foot four-by-four piece of lumber on top of the stack on a rack. Matea did not testify at his November 18, 2002 deposition as to how his injury occurred. Matea told Dr. Carroll Brodsky, a psychiatrist, on November 17, 2002, that the 12-foot four-by-four pressure-treated lumber fell from an upper rack onto him as he was taking some returned lumber back to another part of the store. On December 13, 2002, Dr. Charles Borgia, an orthopedic surgeon, indicated in his report that Matea's injury occurred as he was stocking 12-foot four-by-four treated lumber and the lumber fell onto his left leg. On February 10, 2004, Matea told Dr. Allan Sidle, a psychiatrist, that he was pushing a cart of lumber returns when he heard a noise, like metal bending, and lumber from a rack poured down on him. Matea testified at the hearing before the WCJ on January 21, 2005, that he injured his foot when a rack of lumber fell on his left leg, and the reports of Drs. Brodsky, Borgia and Sidle were admitted into evidence at that hearing.

However, Matea's attempts to return to his prior position were unsuccessful and he last worked in December 2001. He reports constant pain in his ankle and foot. He also reports depression due to his belief that he is not going to improve and anxiety due to his fear of being hurt again. One psychiatrist determined that the predominant cause of Matea's pain disorder and depression was his September 16, 2001 industrial injury. Another psychiatrist found no industrial psychiatric injury.

### The Hearing Before the WCJ

Matea filed an application for adjudication of his workers' compensation claim. Matea was the only witness at the hearing before the WCJ on January 21, 2005. He testified that he was hired by The Home Depot in May, June, or July 2001. He injured his foot when a rack of lumber fell on his left leg. Although Matea had testified at his April 8, 2002 deposition that another employee witnessed the incident, neither party called that employee to testify. Nor did The Home Depot offer or introduce the transcripts of Matea's April 8, and November 18, 2002 deposition testimony, choosing instead to submit them posttrial. The Home Depot admitted the injury to Matea's left leg but contested the alleged resulting psychiatric injury. The Home Depot also raised the issue of whether any psychiatric injury was compensable under section 3208.3, which limits compensation for psychiatric injuries that occur during the first six months of an employee's employment, and the WCJ granted the parties time to file posttrial briefs on the issue.

In his posttrial brief Matea contended that (1) the section 3208.3 issue was improperly raised for the first time at trial; (2) The Home Depot did not carry its burden of proving that Matea was not employed for six months under section 3208.3; (3) including postinjury employment, Matea was employed for The Home Depot for over six months; (4) Matea's injury falls under the "sudden and extraordinary employment condition" exception in section 3208.3, subdivision (d); and (5) regardless of whether section 3208.3 applies, The Home Depot is liable for psychiatric treatment needed to fix the underlying physical problem resulting from the admitted industrial leg injury. In its response to Matea's posttrial brief, The Home Depot contended that it was denying Matea's claim that his psychiatric injury is a compensable consequence of the September 16, 2001 injury pursuant to section 3208.3, subdivision (d), because Matea was employed for less than six months at the time of the injury. The Home Depot further claimed that the issue as to the applicability of section 3208.3 was raised in its pretrial statement.

The WCJ vacated submission of the matter and set a further hearing in order to supplement the record on the issue of the duration of Matea's employment under section 3208.3. At the June 29, 2005 further hearing,

which Matea did not attend but where he was represented by counsel, The Home Depot submitted paycheck-detail records indicating that Matea was employed there from mid-July through December 2001. The matter was resubmitted on July 1, 2005.

### The WCJ's Findings and Award

The WCJ filed and served his findings and award on July 6, 2005. The WCJ found in pertinent part that Matea was 100 percent permanently disabled and, although he was not employed by The Home Depot for a total of six months as required by section 3208.3, subdivision (d), his psychiatric injury was caused by "a sudden and extraordinary event. While the case is a close one, the facts here do seem to meet that definition. [Matea] was injured when a wall shelf holding up a large amount of lumber gave way without warning, which resulted in the fall of the lumber on [Matea's] leg. No testimony was presented regarding how often Home Depot has its shelves give way and dump lumber onto its aisles, but one assumes that such occurrences are quite rare, given that those aisles are open to the public."

The WCJ awarded Matea permanent disability of 100 percent, entitling him to payments at the rate of $314.40 per week beginning January 15, 2004, and continuing for life. The WCJ also awarded Matea further medical treatment reasonably required to cure or relieve him from the effects of his injury, and reimbursement for self-procured medical treatment expenses. The Home Depot filed a petition for reconsideration.

### The Board's Decision

The Board filed an opinion and order granting reconsideration and decision after reconsideration on September 23, 2005. The Board found that, pursuant to section 3208.3, subdivision (d), Matea's claim of psychiatric injury "is barred unless the psychiatric injury was caused by a 'sudden and extraordinary employment condition.' And since the 'sudden and extraordinary' provision negates the six-month employment requirement, which is already established herein, it is [Matea's] burden to show that the psychiatric injury was caused by a sudden and extraordinary employment condition. [¶] Based on [Matea's] trial testimony, we conclude that [Matea] did not meet his burden. At the trial of January 21, 2005, [Matea] testified that 'he injured his foot when a rack of lumber fell on his left leg.' . . . The Home Depot is a big-box hardware store that sells lumber to the public; the fact that [Matea], a store manager trainee, would be working in close proximity to racks of lumber is not unusual. Again, it was [Matea's] testimony that the injury of September 16, 2001 happened when 'a rack of lumber fell on his left leg.' Considering the site of employment, wherein it would have been normal for

[Matea] to work in proximity to lumber racks, we conclude that a rack of lumber falling on his leg was not a 'sudden and extraordinary employment condition' within the meaning of section 3208.3, [subdivision] (d). Therefore, his claim of psychiatric injury is barred by the six-month employment requirement. Accordingly, we will reverse the WCJ's finding that [Matea] sustained an industrial psychiatric injury."

The Board rescinded the WCJ's decision and award. It found that Matea sustained a compensable injury to his left leg, but all remaining issues, including but not limited to permanent disability, were returned to the trial level for further proceedings and a new decision consistent with the Board's opinion. Matea petitioned for reconsideration.

The Board filed an opinion and order denying further reconsideration on November 3, 2005. The Board stated in part, "the Court in *Wal-Mart Stores, Inc. v. Workers' Compensation Appeals Board* [(*Wal-Mart*)] (2003) 112 Cal.App.4th 1435[, 1441,] fn. 9[,] [5 Cal.Rptr.3d 822] stated that the ' "sudden and extraordinary" language is limited to occurrences such as gas main explosions or workplace violence—the type of events that would naturally be expected to cause psychic disturbances even in a diligent and honest employee.' [¶] In asserting that his injury was 'sudden and extraordinary' in this case, [Matea] misinterprets the [*Wal-Mart*] Court's language in footnote 9. The injury in this case may have been a devastating injury, but it was not legally sudden and extraordinary because it was not in the nature of a gas main explosion or workplace violence or a type of event that would naturally be expected to cause psychic disturbances even in a diligent and honest employee."

Matea filed a timely petition for writ of review.[3]

## DISCUSSION

*Overview of California's Workers' Compensation System*

■ California has a no-fault workers' compensation system. With a few exceptions, all California employers are liable for the compensation provided by the system to employees injured or disabled in the course and scope of their employment, regardless of the fault of either party. (Cal. Const., art. XIV, § 4.) The Workers' Compensation Act intends comprehensive coverage of

---

[3] Although the Board's order remanded the matter for further proceedings, it is a final order for purposes of appellate review, as it represents a decision on the right to benefits. (*Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 534–535 [163 Cal.Rptr. 750]; *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1075 [97 Cal.Rptr.2d 418].)

injuries during employment. (See §§ 3201, 3300, 3600, subd. (a).) "The purposes of the Act are several. It seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. [Citations.]" (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].)

■ The employee has the burden of proving, by a preponderance of the evidence, that he or she has sustained a compensable industrial injury. (§§ 3202.5, 3208.) Section 3202 "provides that issues of compensation for injured workers 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' " (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Department of Rehabilitation*).) This rule is binding upon the Board as well as this court. (*Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280 [113 Cal.Rptr. 162, 520 P.2d 978] (*Lamb*); *Department of Rehabilitation, supra*, 30 Cal.4th at p. 1290.) Moreover, " '[a]ll aspects of workers' compensation law . . . are to be liberally construed in favor of the injured worker.' [Citation.]" (*Department of Rehabilitation, supra*, at pp. 1290–1291.)

"It should be remembered, however, that the purpose of an award under the workers' compensation scheme ' "is not to make the employee whole for the loss which he has suffered but to prevent him and his dependents from becoming public charges during the period of his disability. . . . Complete protection is not afforded the employee from disability because this would constitute an invitation to malinger or to be careless on the job as he would then lose nothing in assuming a disabled status." ' [Citation.]" (*Department of Rehabilitation, supra*, 30 Cal.4th at pp. 1289–1290.)

■ All judicial powers under the workers' compensation system are vested in the Board, subject only to the review by the appellate courts of this state. (§§ 111, 5301, 5950.) WCJ's hear and decide compensation claims as trial judges, and the Board functions as an appellate body. The Board has the power to reject the factual findings of a WCJ and to make its own findings of fact, and may affirm, rescind, alter or amend a WCJ's decision or award. (§§ 5906, 5908.5; *Lamb, supra*, 11 Cal.3d at pp. 280–281.)

*Appellate Review*

An appellate court's review of a decision by the Board is limited. "As to findings of fact, we defer to the Board's findings if supported by substantial

evidence. (§ 5952; [Citation].) While we accord ' "significant respect" ' to the Board's interpretation of statutes in the area of workers' compensation [citation], we subject the Board's conclusions of law to de novo review [citations]." (*Department of Rehabilitation, supra,* 30 Cal.4th at p. 1290.)

" '[A]lthough the board is empowered to resolve conflicts in the evidence [citations], to make its own credibility determinations [citations], and upon reconsideration to reject the findings of the [WCJ] and enter its own findings on the basis of its review of the record [citations], nevertheless, any award, order or decision of the board must be supported by substantial evidence in the light of the entire record (Lab. Code, § 5952; [citation]).' [Citation.]" (*Lamb, supra,* 11 Cal.3d at pp. 280–281, italics omitted.) " 'As a general rule, the board "must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached." [Citations.]' [Citation.]" (*Id.* at p. 281, italics omitted.)

" 'Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Work[ers'] Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. [Citation.]' " (*Lamb, supra,* 11 Cal.3d at p. 280.)

"The interpretation of a labor statute is a legal question which we review independently from the determination of the [Board]. [Citation.] Nonetheless, we generally defer to the [Board's] interpretation of labor statutes, unless the interpretation is clearly erroneous. [Citation.]" (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486]; see *Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1180 [8 Cal.Rptr.3d 467] (*Pacific Gas & Electric*).) " 'An erroneous interpretation or application of law by the [Board] is a ground for annulment of [its] decision. [Citations.]' [Citations.]" (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1180.)

■ "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*); see *Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1180.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory

sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, supra*, 43 Cal.3d at p. 1387.)

*Section 3208.3*

Section 3208.3, subdivision (a), states that "[a] psychiatric injury shall be compensable if it is a mental disorder which causes disability or need for medical treatment, and it is diagnosed pursuant to [specified] procedures." Subdivision (d) of section 3208.3 provides in pertinent part that, "[n]otwithstanding any other provision of this division, no compensation shall be paid pursuant to this division for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months. The six months of employment need not be continuous. This subdivision shall not apply if the psychiatric injury is caused by a sudden and extraordinary employment condition."

"The statute, which contains other provisions governing and to some extent limiting benefits for psychiatric claims, was enacted in 1989. It was designed to address public and legislative concerns about, inter alia, 'the proliferation of workers' compensation cases with claims for psychiatric injuries.' [Citation.]" (*Wal-Mart, supra*, 112 Cal.App.4th at p. 1439, fn. omitted.) "Section 3208.3 was . . . passed in 'response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims of psychiatric injuries.' [Citation.] As a result, '[t]he Legislature's expressed intent in enacting Labor Code section 3208.3 was to establish a new and higher threshold of compensability for psychiatric injury.' [Citations.]" (*City of Oakland v. Workers' Comp. Appeals Bd.* (2002) 99 Cal.App.4th 261, 265 [120 Cal.Rptr.2d 873] (*City of Oakland*); see § 3208.3, subd. (c).)

"Subdivision (d) of section 3208.3 was enacted two years later, with the apparent purpose of 'limit[ing] questionable claims for psychiatric injuries resulting from routine stress during the first six months of employment.' [Citation.]" (*Wal-Mart, supra*, 112 Cal.App.4th at p. 1439; see Stats. 1991, ch. 115, § 4, p. 683.) As enacted, section 3208.3, subdivision (d), stated in pertinent part: "Notwithstanding any other provision of this division, no compensation shall be paid pursuant to this division for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months. The six months of

employment need not be continuous. This subdivision shall not apply if the psychiatric injury is caused by a sudden and extraordinary employment condition *as distinguished from a regular and routine event. As used in this subdivision, a 'regular and routine employment event' includes, but is not limited to, a lawful, nondiscriminatory, good faith personnel action, such as discipline, work evaluation, transfer, demotion, layoff or termination.*" (Stats. 1991, ch. 115, § 4, pp. 683, 684, italics added.)

"Underlying [the Legislature's] policy decision is the fact that in many employer-employee contracts the new employee is customarily on probation during the first six months of employment. It is during that period when problems between the employee and employer or supervisor often occur. Those problems often result in disciplinary action, resignation, or termination and lead to claims of psychiatric injury due to stress. Moreover, psychiatric injuries from stress during regular and routine employment are necessarily cumulative injuries that occur over time." (*Hansen v. Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179, 1184 [23 Cal.Rptr.2d 30] (*Hansen*).)

In 1993, section 3208.3 was amended again; subdivision (d) was amended and new subdivisions were added. "For example, the statute [now] imposes restrictions on claims for injury to the psyche that are filed after the employee is fired or laid off (§ 3208.3, subd. (e)) and prohibits compensation for injury caused by a 'lawful, nondiscriminatory, good faith personnel action' (*Id.,* subd. (h).)" (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1439, fn. 4.) "[T]he language and legislative history of section 3208.3 instruct that the Legislature's public policy goals should be considered when determining whether an award of benefits is warranted. The Legislature made quite clear that it intended to *limit* claims for psychiatric benefits due to their proliferation and their potential for fraud and abuse. Therefore, any interpretation of the section that would lead to more or broader claims should be examined closely to avoid violating express legislative intent. [Citation.]" (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1182.)

When section 3208.3 was amended in 1993, the language included in section 3208.3, subdivision (d), which we italicized above, was deleted and recodified in part in subdivisions (e) and (h). (Stats. 1993, ch. 118, § 1, p. 1225.) "As enacted, . . . subdivision [(d)] also included the language, 'Nothing in this section shall be construed to mean that there shall not be compensability for any psychiatric injury which is related to any physical injury in the workplace.' This language, however, was [also] deleted in 1993." (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1439, italics and fns. omitted.) Therefore, courts have held that "the six-month limitation expressed in subdivision (d) of section 3208.3 applies to *all* claims for psychiatric

injury." (*Id.* at p. 1441; see also *Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237, 1246–1247 [117 Cal.Rptr.2d 865] (*Lockheed*).) "Although it is true that a claim for psychiatric injury which rests on an objective physical injury may be somewhat less likely to be fraudulent than one based on 'stress,' there remains a substantial potential for the fraudulent inflation of a claim by adding alleged psychic injuries; thus, including such claims to meet the six-month standard is by no means unreasonable." (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1441; see also *Lockheed, supra,* 96 Cal.App.4th at p. 1249.)

The court in *Wal-Mart* held that, due to the 1993 amendment to section 3208.3, subdivision (d), "an employee who files a workers' compensation claim seeking benefits for an injury to the psyche that derives from the effects of an admitted routine physical injury, cannot recover unless the employee has worked for the employer for at least six months." (*Wal-Mart, supra,* 112 Cal.App.4th at pp. 1437–1438.) The employee in *Wal-Mart* suffered an admitted orthopedic injury to her back when she had been employed by Wal-Mart for less than six months. (*Id.* at p. 1438.) The court found that the six-month limitation in section 3208.3, subdivision (d), precluded the employee's claim because "[t]he subdivision *does* contain an exception for psychic injuries resulting from a 'sudden and extraordinary employment condition,' but *no* other claims for such injury are excluded." (112 Cal.App.4th at p. 1441, fn. omitted.) The court went on to explain in footnote 9: "If the argument were made that an accidental injury constitutes a 'sudden and extraordinary employment condition,' we would reject it. For one thing, such an interpretation would mean that psychological injuries resulting from accidents would not be subject to the six-month rule, but such injuries arising from cumulative physical injury *would* be governed by that limitation; this distinction would make no sense, and we are reluctant to attribute irrational intentions to the Legislature. [Citation.] Furthermore, if the Legislature intended to except psychic claims derived from physical injuries from the operation of the statute, presumably it would have done so in a much less ambiguous manner. In our view, the 'sudden and extraordinary' language is limited to occurrences such as gas main explosions or workplace violence—the type of events that would naturally be expected to cause psychic disturbances even in a diligent and honest employee." (*Id.* at p. 1441, fn. 9.)

*Analysis*

Matea contends that a shelf full of lumber giving way, causing the lumber to fall on a worker and injuring his leg, is a "sudden and extraordinary employment condition" within the meaning of section 3208.3, subdivision (d). He argues that the Board misread the dicta in *Wal-Mart, supra,* 112 Cal.App.4th 1435, a case that did not need to decide what constitutes a

sudden and extraordinary employment condition under section 3208.3, subdivision (d), by reading the language in footnote 9 "as if it were written into the statute." "[Section] 3202 requires the [Board] to limit the statute to its terms, and those terms are simple. It only requires the injury to be sudden (if it were not sudden Mr. Matea would not have been crushed) and extraordinary which means unusual." "To hold that the statute bars this type of injury improperly narrowly construes the statute, violates [section] 3202, as well as the plain meaning of the statute."

We agree with the court in *Wal-Mart* that the sudden and extraordinary employment condition language in section 3208.3, subdivision (d), is limited to "the type of events that would naturally be expected to cause psychic disturbances even in a diligent and honest employee." (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1441, fn. 9.) We also agree that the sudden and extraordinary employment condition language in section 3208.3, subdivision (d), could certainly include occurrences such as gas main explosions or workplace violence. However, giving the language of the statute "its usual, ordinary import" (*Dyna-Med, supra,* 43 Cal.3d at pp. 1386–1387), in light of its legislative history, and liberally construing the statute in the employee's favor (§ 3202), we believe that the Legislature intended to except from the six-month limitation psychiatric injuries that are caused by "a sudden and extraordinary employment condition," and not by a regular or routine employment event. While the amendments to section 3208.3 eliminated an explicit distinction between "a regular and routine employment event" and "a sudden and extraordinary employment condition," in subdivision (d), we believe that the Legislature's intent in doing so was not to impose an additional limitation on what constitutes a sudden and extraordinary employment condition. (Cf. *City of Oakland, supra,* 99 Cal.App.4th at p. 267.) Rather, the amendments to section 3208.3 in 1993 were intended to impose an additional limitation on what constitutes a compensable psychiatric injury by excepting psychiatric injuries resulting from routine physical injuries during the first six months as well as psychiatric injuries resulting from routine personnel decisions during the first six months of an employee's employment.

Webster's Third International Dictionary (1993), at page 2284, defines "sudden" as "happening without previous notice or with very brief notice : coming or occurring unexpectedly : not foreseen or prepared for." The same dictionary defines "extraordinary" as "going beyond what is usual, regular, common, or customary"; and "having little or no precedent and usu[ally] totally unexpected." (Webster's 3d Internat. Dict., *supra,* at p. 807.) Gas main explosions and workplace violence are certainly uncommon and usually totally unexpected events; thus, they may be sudden and extraordinary employment conditions. However, we believe that there may also be other "sudden and extraordinary" occurrences or events within the contemplation of

section 3208.3, subdivision (d) that would naturally be expected to cause psychic disturbances even in diligent and honest employees. Therefore, if an employee carries his or her burden of showing by a preponderance of the evidence that the event or occurrence that caused the alleged psychiatric injury was something other than a regular and routine employment event or condition, that is, that the event was uncommon, unusual, and occurred unexpectedly, the injury may be compensable even if the employee was employed for less than six months.

Amici curiae California Insurance Guarantee Association and American Insurance Association argue that the Legislature used the term "condition" rather than "event" in section 3208.3, subdivision (d), and contend that the Legislature thereby intended to limit the exception to sudden and extraordinary "conditions of employment" rather than to sudden and extraordinary employment "events" or "occurrences." We disagree with this contention. In subdivision (e) of the same section, which was enacted in 1993 at the same time that subdivision (d) was amended, the Legislature, in limiting claims for compensation filed after termination of employment or layoff, stated in part that the employee bears the burden of showing "one or more of the following *conditions* exist: [¶] (1) Sudden and extraordinary *events of employment* were the cause of the injury. . . ." (Italics added.) We believe that the Legislature intended "employment conditions" in subdivision (d) of section 3208.3 to mean the same thing as the "events of employment" condition in subdivision (e) of the same section. The Legislature simply intended section 3208.3, subdivision (d), as amended, to limit claims for psychiatric injuries resulting from routine stress and routine injuries during the first six months of employment. (*Wal-Mart, supra,* 112 Cal.App.4th at pp. 1437–1439.)

The question before this court is whether Matea carried his burden of showing by a preponderance of the evidence " 'in the light of the entire record' " (*Lamb, supra,* 11 Cal.3d at p. 281, italics omitted) that he suffered a compensable psychiatric injury as a result of an admitted leg injury during the first six months of his employment with The Home Depot. Matea testified that his leg was injured when a rack of lumber fell on his left leg. No other testimony regarding how Matea's leg was injured was introduced at the hearing before the WCJ, but various medical reports were submitted wherein Matea further described the events leading up to his injury. The WCJ found on the record before him that Matea "was injured when a wall shelf holding up a large amount of lumber gave way without warning, which resulted in the fall of the lumber on [Matea's] leg."

The Board found, based on Matea's trial testimony, that " 'he injured his foot when a rack of lumber fell on his left leg.' " We are bound by the Board's factual findings, as they are supported by substantial evidence. (§ 5952.)

 While the record is sparse and the facts are few concerning what caused the lumber to fall, we believe that all the lumber in a rack falling into an aisle and onto an employee's leg causing injury to the employee was in this case such an uncommon, unusual, and totally unexpected event or occurrence that it "would naturally be expected to cause psychic disturbances even in a diligent and honest employee." (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1441, fn. 9.) As the WCJ stated, no testimony was presented regarding how often lumber falls from racks into the aisles at The Home Depot, and there was no evidence presented that such occurrences are regular and routine events. We must assume, as the WCJ assumed, that they are uncommon, unusual and totally unexpected events; otherwise, The Home Depot would have presented testimony to the contrary. Therefore, in the absence of any contrary evidence, when Matea presented evidence that he was injured as a result of all the lumber from a rack falling onto him, he met his burden of proving that he was injured as a result of a sudden and extraordinary employment condition as required by section 3208.3, subdivision (d). Accordingly, the Board erred in interpreting section 3208.3, subdivision (d), to find otherwise.

We do not believe that our finding of a compensable injury under section 3208.3, subdivision (d) here, on the limited record and factual findings in this case, will lead to increased claims for psychiatric injuries by employees who have been employed for less than six months. The employee still bears the burden of showing that the alleged psychiatric injury did not "derive[] from the effects of a[] . . . routine physical injury" (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1438), and was not the result of the routine type of stress or employment event that all employees who work for the same employer may experience or expect within the first six months of their employment (*Hansen, supra,* 18 Cal.App.4th at p. 1184; *City of Oakland, supra,* 99 Cal.App.4th at pp. 265–267; *Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1182). Each case must be considered on its facts in order to determine whether the alleged psychiatric injury occurred as a result of sudden and extraordinary events that would naturally be expected to cause psychic disturbances even in a diligent and honest employee. (*Wal-Mart, supra,* 112 Cal.App.4th at p. 1441, fn. 9.) Thus, our findings here are consistent with the express legislative intent of the original enactment of section 3208.3 in 1989, which was "passed in 'response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims of psychiatric injuries.' " (*City of Oakland, supra,* 99 Cal.App.4th at p. 265.)

## DISPOSITION

The Board's opinion and order after reconsideration filed on September 23, 2005, is annulled. The matter is remanded to the Board with directions to issue a new and different order in the case consistent with this opinion. Matea shall recover costs.

Mihara, J., and McAdams, J., concurred.

A petition for a rehearing was denied December 12, 2006, and the opinion was modified to read as printed above.