Filed 1/30/18; pub. order 2/23/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>      Petitioner,<br><br>      v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and JOSE A. GUZMAN,<br><br>      Respondents. | H044300<br>(W.C.A.B. No. ADJ6839277) |

## I.  INTRODUCTION

Respondent Jose A. Guzman, a construction laborer, was operating a compactor when he was injured.  The compactor, which is used to pack down soil, hit a rock while Guzman was working on a hillside with a 45-degree slope.  The compactor rose in the air, caused Guzman to fall backwards, and then fell on top of him.  The workers' compensation judge (WCJ) determined that Guzman sustained an injury to his back and psyche, and that the psychiatric injury was caused by a "sudden and extraordinary employment condition."  (Lab. Code, § 3208.3, subd, (d).)[1]  Petitioner State Compensation Insurance Fund (SCIF), the workers' compensation carrier for Guzman's

---

[1] All further statutory references are to the Labor Code.

employer, petitioned for reconsideration. The Workers' Compensation Appeals Board (Board) denied reconsideration.

SCIF filed a petition for writ of review. SCIF contends that Guzman failed to meet his burden of proving that his psychiatric injury was caused by a "sudden and extraordinary employment condition." (§ 3208.3, subd. (d).)

For reasons that we will explain, we agree with SCIF. Accordingly, we will annul the Board's order denying reconsideration.

## II. BACKGROUND

### A. *Facts*

Guzman, who was the only witness at the hearing before the WCJ, testified that he had been employed by Carmel Valley Construction as a laborer for a little less than six months before he was injured on the job. His normal job duties included digging, compacting, and moving materials around the construction site. A compactor, which is used to pack down soil, has a bar around it, and Guzman would hold on to the bar while operating it. The compactor that Guzman used at the time of the accident weighed 95 pounds. He had been using that compactor for most of the week before the accident.

Guzman had worked as a construction laborer for approximately 12 years before he started working Carmel Valley Construction. In his prior work, he used a compactor approximately every week.

On May 2, 2008, Guzman used the compactor for most of the day on a flat surface. About a half hour before the accident, he began using the compactor on a hillside. There had been digging on the hillside, and pipe was laid down. Guzman used the compactor to pack the dirt covering the pipe. He had only worked on flat surfaces previously.

The slope was approximately seven feet long and he "was working on a 45-degree angle." The accident occurred after he had been working on the slope for about half an

hour. He had been using the compactor for approximately four feet of the slope and was approximately half-way up the slope.

The compactor struck a rock in the soil. The compactor rose in the air and caused Guzman to fall backwards. The compactor then fell on top of him. Guzman sustained a back injury and had two back surgeries. He also sustained a psychiatric injury for which he sought treatment.

Guzman had used compactors for approximately 12 years. He never thought there was any risk of injury while using the compactor, and he never felt he was in danger of having a compactor fall on him before the accident. He had not had a prior accident or any "close calls" involving potential injury while using a compactor. He had never heard of a compactor falling on top of someone. He had never previously lost control of a compactor, and he never had any work injuries before this accident.

**B.** *The WCJ's Findings and Award*

The WCJ determined that Guzman sustained an injury to his back and psyche arising out of his employment, and that the psychiatric injury was caused by a sudden and extraordinary employment condition. In reaching this determination, the WCJ referred to the following evidence: Guzman had never been injured by having a compactor fall on him, he had never experienced such an incident before, there was no evidence that this type of injury had occurred in a similar fashion before, Guzman never had any close calls involving an injury when using a compactor, he never had an accident using a compactor before, and he never thought there was any risk of injury while using the compactor. The WCJ concluded that "having a compactor fall on top of an employee is not something that would reasonably be expected to occur. This type of injury is not a frequent, regular, or routine part of the job. In fact, there is no evidence that having a compactor fall on an employee had ever occurred before. For this reason, it is reasonable to find that this injury was not something that could have been anticipated. This was not the type of injury that would be foreseeable." The WCJ made an award in favor of Guzman for all

3

medical treatment reasonably required to cure or relieve the effects of the injury, including medical treatment for the psychiatric injury.

### C. *SCIF's Petition for Reconsideration*

SCIF petitioned for reconsideration, arguing that Guzman failed to meet his burden of proving that his psychiatric injury was caused by a sudden and extraordinary employment event. SCIF contended that Guzman's injury was caused by the compactor striking a rock in the soil, which was a "typical hazard" in construction. SCIF argued that it was "foreseeable" that soil will contain rocks, that a compactor will recoil when contacting rocks, and that a construction worker will sustain injury under these circumstances. SCIF contended that Guzman's injury-free 12-year work history did "not transform his injury into something extraordinary."

Guzman filed an answer to the petition. He contended that it was SCIF's burden to prove that he was injured by an obvious hazard. Guzman argued that there was undisputed evidence that operating a compactor on a steep slope and having it fall on top of the worker was not a common, usual, or expected condition of employment. He also contended that foreseeability of the risk was not the proper standard, and that there was no evidence to support SCIF's argument that the manner in which he was injured was foreseeable.

### D. *The WCJ's Report and Recommendation*

The WCJ issued a report recommending that SCIF's petition for reconsideration be denied. The WCJ stated that Guzman sustained a back injury from the accident, and that an agreed medical examiner concluded that Guzman suffered from depression that was predominantly caused by the work injury.

The WCJ explained that, based on Guzman's "credible and uncontradicted testimony," his psychiatric injury was caused by a sudden and extraordinary employment condition. Regarding the suddenness of the condition, the WCJ stated that Guzman's "unrebutted testimony" established that "the compactor struck a rock causing the

4

compactor to rise up in the air and to fall on top of [him] and that this type of event had never occurred before." Regarding the extraordinariness of the condition, the WCJ stated that Guzman's "uncontradicted trial testimony" was that (1) he had never heard of a compactor falling on anyone before this accident, and (2) he had never lost control of a compactor before the accident. The WCJ stated that, although SCIF contended the injury was a typical hazard of Guzman's occupation, there was no evidence to support that allegation.

The WCJ also stated that SCIF presented a "flawed" argument concerning foreseeability because it presented no evidence to support its theory that a compactor will recoil when contacting rocks, and that a construction worker using a compactor will sustain an injury when the compactor strikes a rock in the soil. The WCJ further determined that unforeseeability was not a prerequisite for a workplace event or condition to qualify as a sudden and extraordinary employment condition.

E. *The Board's Order*

On December 6, 2016, the Board filed an opinion and order adopting the WCJ's report and denying reconsideration. The Board stated that it had given the WCJ's credibility determination "great weight" because the WCJ had the opportunity to observe the demeanor of Guzman. Further, the Board concluded there was "no evidence of considerable substantiality that would warrant rejecting the WCJ's credibility determination."

SCIF filed a petition for writ of review.[2]

---

[2] We granted the application of California Workers' Compensation Institute to file an amicus curiae brief in support of SCIF.

5

### III.   DISCUSSION

#### A. *The Parties' Contentions*

SCIF contends, as it did below, that Guzman failed to meet his burden of proving that his psychiatric injury was caused by a "sudden and extraordinary employment condition." (§ 3208.3, subd. (d).)  It argues that the incident was not an uncommon, unusual, and totally unexpected event, and that instead, Guzman encountered an ordinary, foreseeable occupational hazard.  SCIF argues that "[l]oose soil at construction sites is bound to have rocks, gravel, rough spots, and other loose or uneven materials as a matter of ordinary, routine conditions," and that the "risks of tilting, falling, or losing balance while operating the heavy machine on a 45-degree slope were all reasonably foreseeable risks."  SCIF also contends that the Board erroneously placed the burden of proof on SCIF.

Guzman again contends that his uncontradicted testimony provides substantial evidence to support the determination that his injury was caused by a sudden and extraordinary event.  He points to (1) the testimony that he was operating a heavy soil compactor on a steep slope when the compactor fell on top of him, and (2) the testimony regarding his prior experience with compactors.  Guzman also contends that foreseeability, as urged by SCIF, is not the correct legal standard, and that there is no evidence to support the contention that the manner in which he was injured was foreseeable.  Lastly, Guzman requests that the matter be remanded to the Board for an award of attorney's fees pursuant to section 5801.[3]

---

[3] Section 5801 provides in part:  "In the event the injured employee . . . prevails in any petition by the employer for a writ of review from an award of the appeals board and the reviewing court finds that there is no reasonable basis for the petition, it shall remand the cause to the appeals board for the purpose of making a supplemental award awarding to the injured employee or his attorney . . . a reasonable attorney's fee for services rendered in connection with the petition for writ of review."

6

The Board, like Guzman, contends that whether an event is a foreseeable occupational hazard is not the correct standard for determining whether the event is extraordinary within the meaning of section 3208.3, subdivision (d).  The Board likewise argues that there is no evidence that using a soil compactor on a steep incline and having it fall on the operator is an ordinary, foreseeable occupational hazard at a construction site.  The Board contends that substantial evidence establishes that the employment condition causing Guzman's injury was uncommon and unusual, and not a regular or routine event.

### B.  *General Legal Principles Regarding Workers' Compensation Awards and the Standard of Review*

An employee has the burden of proving, by a preponderance of the evidence, that he or she has sustained a compensable injury within the workers' compensation system. (*Matea v. Workers' Comp. Appeals Bd.* (2006) 144 Cal.App.4th 1435, 1443 (*Matea*).) " ' "Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Work[ers'] Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee.  [Citation.]" ' [Citation.]" (*Id.* at p. 1444.)

"Once an injured worker is awarded compensation for an industrial injury and that award is affirmed by the Board, our review of that decision is limited.  As to findings of fact, we defer to the Board's findings if supported by substantial evidence.  [Citation.]" (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290.)  "In this context, judicial review has been expressly limited by statute to whether the award 'was not supported by substantial evidence' and the factual findings 'support the . . . award.'  (§ 5952, subds. (d), (e).)  Indeed, section 5952 expressly provides that '[n]othing in this section shall permit the court … to exercise its independent judgment on the evidence.' " (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015)

61 Cal.4th 291, 302-303.)  "Thus if the board's findings ' "are supported by inferences which may fairly be drawn from evidence even though the evidence is susceptible of opposing inferences, the reviewing court will not disturb the award." ' [Citation.]" (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 664.)

In contrast, " '[t]he interpretation of a labor statute is a legal question which we review independently from the determination of the [Board].  [Citation.]  Nonetheless, we generally defer to the [Board's] interpretation of labor statutes, unless the interpretation is clearly erroneous.  [Citation.]' [Citations.]  ' "An erroneous interpretation or application of law by the [Board] is a ground for annulment of [its] decision.  [Citations.]" [Citations.]' [Citation.]" (*Matea*, *supra*, 144 Cal.App.4th at p. 1444.)

In construing a statute, our " 'first task . . . is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' [Citations.]  'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.  [Citations.]  Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.  [Citation.]  Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.]" (*Matea*, *supra*, 144 Cal.App.4th at pp. 1444-1445.)

## C.  *Section 3208.3*

Section 3208.3 sets forth certain requirements in order for a psychiatric injury to be compensable.  Subdivision (d) of section 3208.3 states that "no compensation shall be paid . . . for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months. . . .  This

8

subdivision shall not apply if the psychiatric injury is caused by a *sudden and extraordinary* employment condition."  (Italics added.)

Section 3208.3, which was enacted in 1989, was designed to address public and legislative concerns about workers' compensation, "particularly the proliferation of workers' compensation cases with claims of psychiatric injuries."  (*Hansen v. Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179, 1184 (*Hansen*).)  "The Legislature's expressed intent in enacting Labor Code section 3208.3 was to establish a new and higher threshold of compensability for psychiatric injury.  (Lab. Code, § 3208.3, subd. (c).)"  (*Ibid.*)

In 1991, two years after section 3208.3 was enacted, the Legislature amended the statute to require that an employee be employed at least six months in order to receive compensation for a psychiatric injury, unless the psychiatric injury was caused by a sudden and extraordinary employment condition.  (§ 3208.3, subd. (d); Stats. 1991, ch. 115, §§ 4 & 6; *Matea*, *supra*, 144 Cal.App.4th at p. 1446.)  "The Legislature's apparent purpose in enacting [this requirement] was to limit questionable claims for psychiatric injuries resulting from routine stress during the first six months of employment.  Underlying this policy decision is the fact that in many employer-employee contracts the new employee is customarily on probation during the first six months of employment.  It is during that period when problems between the employee and employer or supervisor often occur.  Those problems often result in disciplinary action, resignation, or termination and lead to claims of psychiatric injury due to stress.  Moreover, psychiatric injuries from stress during regular and routine employment are necessarily cumulative injuries that occur over time."  (*Hansen*, *supra*, 18 Cal.App.4th at p. 1184.)

Section 3208.3 was further amended, and "the statute [now] imposes restrictions on claims for injury to the psyche that are filed after the employee is fired or laid off (§ 3208.3, subd. (e)) and prohibits compensation for injury caused by a 'lawful, nondiscriminatory, good faith personnel action' ([*id.*], subd. (h))."  (*Wal-Mart Stores v.*

9

*Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1435, 1439, fn. 4.)  Although these subdivisions expressly restrict compensation for psychiatric injuries resulting from personnel actions, "courts have held that 'the six-month limitation expressed in subdivision (d) of section 3208.3 applies to *all* claims for psychiatric injury.'  [Citations.] 'Although it is true that a claim for psychiatric injury which rests on an objective physical injury may be somewhat less likely to be fraudulent than one based on "stress," there remains a substantial potential for the fraudulent inflation of a claim by adding alleged psychic injuries; thus, including such claims to meet the six-month standard is by no means unreasonable.'  [Citations.]"  (*Matea*, *supra*, 144 Cal.App.4th at pp. 1446-1447.)

In sum, "the language and legislative history of section 3208.3 instruct that the Legislature's public policy goals should be considered when determining whether an award of benefits is warranted.  The Legislature made quite clear that it intended to *limit* claims for psychiatric benefits due to their proliferation and their potential for fraud and abuse.  Therefore, any interpretation of the section that would lead to more or broader claims should be examined closely to avoid violating express legislative intent. [Citation.]"  (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1182.)

## D.  *Sudden and Extraordinary Employment Condition*

In *Matea*, this court determined that a compensable psychiatric injury caused by a "sudden and extraordinary employment condition" under section 3208.3, subdivision (d) means an employment event that is not "regular or routine."  (*Matea*, *supra*, 144 Cal.App.4th at p. 1448.)  This court observed that "sudden" is defined in the dictionary as " 'happening without previous notice or with very brief notice : coming or occurring unexpectedly : not foreseen or prepared for.' "  (*Ibid*.)  This court observed that "extraordinary" is defined as " 'going beyond what is usual, regular, common, or customary'; and 'having little or no precedent and usu[ally] totally unexpected.' "  (*Ibid*.) This court explained that the amendments to section 3208.3 were intended to exclude

10

"psychiatric injuries *resulting from routine physical injuries* during the first six months as well as psychiatric injuries resulting from routine personnel decisions during the first six months of an employee's employment." (*Matea*, *supra*, at p. 1448, italics added.) In contrast, sudden and extraordinary employment conditions are those " 'events that would naturally be expected to cause psychic disturbances even in a diligent and honest employee,' " and "could certainly include occurrences such as gas main explosions or workplace violence." (*Ibid.*)

This court concluded in *Matea* that "if an employee carries his or her burden of showing by a preponderance of the evidence that the event or occurrence that caused the alleged psychiatric injury was *something other than a regular and routine employment event or condition*, that is, that *the event was uncommon, unusual, and occurred unexpectedly*, the injury may be compensable." (*Matea*, *supra*, 144 Cal.App.4th at p. 1449, italics added.) In other words, the employee "bears the burden of showing that the alleged psychiatric injury did not 'derive[] from the effects of a[] . . . routine physical injury' [citation], and was not the result of the routine type of stress or employment event that all employees who work for the same employer may experience or expect within the first six months of their employment [citations]." (*Id.* at p. 1450.)

Three appellate opinions have addressed whether a psychiatric injury was caused by an extraordinary employment condition, including this court's opinion in *Matea*.

### 1. *Matea*: being struck by rack of falling lumber in a store aisle is extraordinary

In *Matea*, this court determined that a rack of lumber falling on an employee of The Home Depot was "a sudden and extraordinary employment condition" within the meaning of section 3208.3, subdivision (d). (*Matea*, *supra*, 144 Cal.App.4th at pp. 1439, 1450.) This court acknowledged that the record was "sparse" and that there were "few" facts regarding the cause for the lumber falling, but this court believed that "all the lumber in a rack falling into an aisle and onto an employee's leg causing injury to the

11

employee was . . . such an uncommon, unusual, and totally unexpected event or occurrence." (*Id.* at p. 1450.) This court explained: "As the WCJ stated, no testimony was presented regarding how often lumber falls from racks into the aisles at The Home Depot, and there was no evidence presented that such occurrences are regular and routine events. We must assume, as the WCJ assumed, that they are uncommon, unusual and totally unexpected events; otherwise, The Home Depot would have presented testimony to the contrary. Therefore, in the absence of any contrary evidence, when [the employee] presented evidence that he was injured as a result of all the lumber from a rack falling onto him, he met his burden of proving that he was injured as a result of a sudden and extraordinary employment condition as required by section 3208.3, subdivision (d)." (*Ibid.*)

After *Matea*, two appellate courts determined that the circumstances in those cases were not extraordinary. We consider those cases next.

### 2. *Garcia*: falling from ladder is not extraordinary

In *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (*Garcia*) (2012) 204 Cal.App.4th 766 (*Garcia*), an "avocado picker/high tree worker" fell from the top of a 24-foot ladder while picking avocados from a tree. (*Id.* at p. 769.) The *Garcia* court concluded that the employee's fall was sudden, but not extraordinary, within the meaning of section 3208.3, subdivision (d). (*Garcia*, *supra*, at p. 769.) The *Garcia* court distinguished *Matea*, which involved a rack of lumber falling into an aisle and injuring an employee. The *Garcia* court reasoned that the lumber would have presumably struck anyone who happened to be in the aisle at the time, and "[s]hoppers typically are not on the lookout for falling merchandise as they walk down the store aisles." (*Garcia*, *supra*, at p. 773.) As a result, it was reasonable to assume that the incidents of falling lumber were " ' "quite rare, given that those aisles are open to the public." ' " (*Ibid.*)

In contrast, in the case before it, the *Garcia* court explained that the employee's injury "did not occur in a public area or in an area shielded from the typical hazards of his

12

occupation. To the contrary, the injury occurred in the avocado grove where [the employee] and his coworkers were picking fruit from high trees while standing on tall ladders. A fall under these circumstances cannot be described as an uncommon, unusual and totally unexpected occurrence." (*Garcia*, *supra*, 204 Cal.App.4th at p. 773.) The *Garcia* court referred to a writ denied case and to a Board panel decision in which employees falling from a roof or a ladder were determined not to have suffered from an extraordinary employment condition. (*Garcia*, *supra*, at pp. 773-774; see *Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [Board panel decisions and denials of petitions for writ of review may be cited but have limited precedential value].) The *Garcia* court explained that these are "terrible accidents, but they are hazards of performing work above ground level." (*Garcia*, *supra*, at p. 774.)

The *Garcia* court distinguished the circumstance of "an ordinary occupational event" that becomes "extraordinary." (*Garcia*, *supra*, 204 Cal.App.4th at p. 774.) The *Garcia* court referred to a writ denied case in which a truck driver was involved in a vehicle accident, which is generally not an extraordinary event but "may become so because of extremely unusual circumstances." (*Ibid.*) In particular, it was not " ' "frequent, regular or routine" ' " for a truck driver to lose control of the truck and then fly or fall out of the passenger side, " ' "with a jackknifing trailer in pursuit as the driver tries to roll out of the way." ' [Citation.]" (*Ibid.*)

The *Garcia* court determined that such "extremely unusual circumstances" were not present in the circumstances of an employee falling from a ladder while picking avocados. (*Garcia*, *supra*, 204 Cal.App.4th at p. 774.) The court explained: "No evidence exists that something particularly unusual happened to cause the fall or that [the employee] suffered an injury one would not expect from a fall from that height. To support the claim that his fall was extraordinary, [the employee's] only testimony was that prior to the accident he had not fallen off a ladder or heard of anyone else falling off a ladder at [his employer's worksite]. . . . [¶] SCIF did not introduce evidence that such

13

falls are an industry hazard or that insurance costs reflect that risk, but that was not its burden. [The employee] had the burden to prove that his psychiatric injury was caused by a sudden and extraordinary employment event. [Citation.] He did not meet that burden. [The employee's] observations during his brief employment at [the employer's worksite] and his prior unspecified fruit-picking experiences do not establish his injury was caused by an event that was uncommon, unusual and totally unexpected. There was no evidence the employer violated any safety regulations. An event does not become presumptively extraordinary because the employer offers no evidence it is regular or routine. . . . '[S]uch a broad interpretation could place a greater risk of liability on those employers whose safety measures are better and more effective, i.e., those who manage to prevent accidents on the job from becoming routine or commonplace.' " (*Id.* at pp. 774-775.) The *Garcia* court concluded that, "[i]n the absence of more persuasive evidence that [the employee's] fall was extraordinary, his claim for psychiatric injury is barred under section 3208.3, subdivision (d)." (*Id.* at p. 775.)

### 3. *Dreher*: falling on rain-slicked concrete is not extraordinary

In *Travelers Casualty & Surety Co. v. Workers' Comp. Appeals Bd.* (*Dreher*) (2016) 246 Cal.App.4th 1101 (*Dreher*), an appellate court similarly concluded that the event causing the employee's injury—falling on slippery concrete while walking in the rain to a building in the apartment complex where the employee worked as a live-in maintenance supervisor—was not extraordinary within the meaning of section 3208.3, subdivision (d). (*Id.* at pp. 1104, 1108.) The court determined that the employee's "slip and fall was the kind of incident that could reasonably be expected to occur." (*Id.* at p. 1108.)

### E. *Analysis*

In this case, Guzman suffered injuries while operating a compactor. The compactor struck a rock while he was working on a slope, the compactor rose in the air causing him to fall backwards, and the compactor fell on top of him. Guzman had the

14

burden to show that this event was sudden and extraordinary (§ 3208.3, subd. (d)), that is, the event was uncommon, unusual, and unexpected, rather than a regular and routine employment event or condition. (*Matea*, *supra*, 144 Cal.App.4th at p. 1449.) Specifically, Guzman had the burden to show that his "psychiatric injury did not 'derive[] from the effects of a[] . . . routine physical injury' [citation], and was not the result of the routine type of . . . employment event that all employees who work for the same employer may experience or expect within the first six months of their employment [citations]." (*Id*. at p. 1450*.*)

Guzman testified that he used a compactor approximately every week in his 12 years as a construction laborer although not on a slope. He stated that he had never previously lost control of the compactor or had an accident. Guzman also had never heard of a compactor falling on someone. He never thought there was any risk of injury while using the compactor, and he never felt he was in danger of having a compactor fall on him.

Guzman failed to meet his burden of proving that a "sudden and extraordinary employment condition" caused his injury. (§ 3208.3, subd. (d).) Guzman did not provide any evidence establishing that it is "uncommon, unusual, and totally unexpected" for a rock to be in soil, for a compactor to rise when striking a rock, or for an operator to become unbalanced and to fall when the compactor rises on a 45-degree hillside. (*Matea*, *supra*, 144 Cal.App.4th at p. 1450.) Indeed, he did not introduce *any* evidence regarding what regularly or routinely happens if a compactor hits a rock on a slope. Guzman admitted that he had previously worked on flat surfaces only. Consequently, his history of maintaining control of the compactor and being accident-free on flat surfaces, as well as his lack of awareness of a compactor falling on someone else, had little bearing on whether the event that occurred while he was on the slope, and that caused his injury, was uncommon, unusual, and unexpected.

15

Guzman contends that using a compactor on a slope is itself an uncommon, unusual, and unexpected event because he had never previously worked on a slope, and that therefore the event causing his injury was extraordinary.

We are not persuaded by Guzman's argument. First, Guzman describes the event causing his injury too narrowly. Guzman's injury was not caused solely due to the slope. As the WCJ stated in the report recommending denial of the petition for reconsideration—which report was adopted by the Board—the event underlying Guzman's injury included "the compactor str[iking] a rock causing the compactor to rise up in the air and to fall on top of" the employee.

Second, assuming Guzman's injury was solely due to the slope, there was no evidence establishing that it was uncommon, unusual, and unexpected for a person employed by Carmel Valley Construction to operate a compactor on a slope. The record reflects that Guzman's testimony was limited to *his* lack of experience of working on a slope during his short tenure with the company and with other employers.

Third, assuming it was extraordinary for Guzman to operate a compactor on a slope while working for Carmel Valley Constructions, his employment condition of working on a slope was not "sudden." (§ 3208.3, subd. (d).) Guzman had been using the compactor on the slope with a 45-degree angle for approximately half an hour, and he had worked about half-way up the seven-foot slope before the accident occurred. There was no evidence that Guzman was unaware that he was working on a slope. Given the angle of the slope, and the time and distance he had been working on the slope, the circumstance of Guzman working on the slope cannot be described as a "sudden" employment condition. (§ 3208.3, subd. (d); *Matea*, *supra*, 144 Cal.App.4th at p. 1448 [dictionary definition of "sudden" is " 'happening without previous notice or with very brief notice : coming or occurring unexpectedly : not foreseen or prepared for' "].)

In sum, Guzman had the "burden of showing that [his] psychiatric injury did not 'derive[] from the effects of a[] . . . routine physical injury' [citation], and was not the

16

result of the routine type of . . . employment event that all employees who work for the same employer may experience or expect within the first six months of their employment [citations]." (*Matea*, *supra*, 144 Cal.App.4th at p. 1450.) Guzman failed to present evidence relevant to the employment condition that caused his injury—that is, operating a compactor on a slope when it hits a rock, rises in the air, causes the operator to fall, and hits the operator—and whether such an event was uncommon, unusual, and unexpected. Guzman therefore failed to meet his burden of proving that his injury was the result of a sudden and extraordinary employment condition or event. (§ 3208.3, subd. (d); *Matea*, *supra*, 144 Cal.App.4th at p. 1449.) Accordingly, the Board erred in determining otherwise.

## IV. DISPOSITION

The Board's December 6, 2016 opinion and order denying reconsideration is annulled, and the matter is remanded to the Board with directions to deny Guzman's claim for psychiatric injury.

17

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MIHARA, J.

Filed 2/23/18

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>    Petitioner,<br><br>    v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and JOSE A. GUZMAN,<br><br>    Respondents. | H044300<br>(W.C.A.B. No. ADJ6839277)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on January 30, 2018, was not certified for publication in the Official Reports. California Workers' Compensation Institute, State Compensation Insurance Fund, and Unpublished Workers' Compensation Cases Review Committee have requested the opinion be certified for publication. Under California Rules of Court, rules 8.1105(c), the opinion is ordered published.


_____
BAMATTRE-MANOUKIAN, J.


_____
ELIA, ACTING P.J.


_____
MIHARA, J.

19

Attorney for Petitioner:
State Compensation Insurance Fund

Agavni Gina Hogtanian


Attorneys for Respondent:
Workers' Compensation Appeals Board

Anne Schmitz
John Frederick Shields Jr.


Attorneys for Respondent:
Jose A. Guzman

Alfred Lombardo
Dirk Samuel Stemerman
Rucka O'Boyle, Lombardo & McKenna, LLP


Attorney for Amicus Curiae on behalf of
Petitioner:
California Workers' Compensation
Institute

Michael A. Marks
Law Offices of Saul Allweiss

*State Compensation Ins. Fund v. WCAB (Guzman)*
**H044300**